**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 2 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DONNA DEANZONA, individually
and as Mother and next friend of
DUSTIN DORISE REDD and
WILLIAM DORISE YOUNG,
individually and as next friend of
DUSTIN DORISE REDD,

     Plaintiffs - Appellees,

v.

CITY AND COUNTY OF DENVER;
BETTY JEAN BROOKS, individually
and in her official capacity as
MANAGER OF THE DEPARTMENT
OF PARKS AND RECREATION,

     Defendants - Appellants.

---

DONNA DEANZONA, individually
and as Mother and next friend of
DUSTIN DORISE REDD,

     Plaintiff - Appellee and Cross-
     Appellant,

and

WILLIAM DORISE YOUNG,
individually and as next friend of
DUSTIN DORISE REDD,

     Plaintiff,

No. 99-1151

v.

CITY AND COUNTY OF DENVER;
BETTY JEAN BROOKS, individually
and in her official capacity as
MANAGER OF THE DEPARTMENT
OF PARKS AND RECREATION,

    Defendants - Appellants and
    Cross-Appellees.

No. 99-1186

---

DONNA DEANZONA, individually
and as Mother and next friend of
DUSTIN DORISE REDD,

    Plaintiff,

and

WILLIAM DORISE YOUNG,
individually and as next friend of
DUSTIN DORISE REDD,

    Plaintiff - Appellee and
    Cross-Appellant,

v.

CITY AND COUNTY OF DENVER;
BETTY JEAN BROOKS, individually
and in her official capacity as
MANAGER OF THE DEPARTMENT
OF PARKS AND RECREATION,
JOHN DOES, 1-8,

    Defendants - Appellants and
    Cross-Appellees.

No. 99-1194

Stan M. Sharoff, Assistant City Attorney, (Daniel E. Muse, City Attorney and Efrain M. Padro, Assistant City Attorney     with him on the briefs) Denver, Colorado, for the Defendants-Appellants-Cross Appellees.

Penfield W. Tate III, of Trimble, Tate & Nulan, P.C., (Lydia M. Tate of Trimble, Tate & Nulan, and Cheryl Rowles-Stokes with him on the briefs) Denver, Colorado, for the Plaintiff-Appellee-Cross-Appellant DeAnzona.

Philip R. Cockerille of Philip R. Cockerille, P.C., Denver, Colorado, for the Plaintiff-Appellee-Cross-Appellant William Young.

Before **TACHA**,  **MAGILL**,[*]  and **McWILLIAMS**, Circuit Judges.

**MAGILL,** Circuit Judge.

Donna DeAnzona and William Young,[1] the mother and father of Dustin Redd, brought separate suits, which were eventually joined, against the City and County of Denver and Betty Jean Brooks, the Director of the Denver Department of Parks and Recreation, alleging negligence in the death of their son and a violation of his substantive due process rights.  The district court denied Brooks's

---

[*]Honorable Frank Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

[1]Collectively "DeAnzona."

motion for summary judgment based on qualified immunity and denied Denver and Brooks's summary judgment motion on plaintiffs' substantive due process claim, but granted summary judgment for the defendants on the negligence claim based on governmental immunity. We REVERSE in part and AFFIRM in part.

## I. BACKGROUND

On June 25, 1996, at some time between 1:30 p.m. and 2:15 p.m., Dustin Redd, a five-year-old boy, drowned in Ferril Lake, which is located in City Park, Denver, Colorado. Redd participated in the Denver Summer in the Parks (SIP) day-camp program, as a camper in one of two camps located at City Park. Activities at the camp included field games, board games, use of the paddle boats, and fishing. On the day in question, Camps I and II at City Park combined because only fifty-five children arrived instead of the ninety children who were enrolled in the two camps. Thus, eight counselors were supervising fifty-five children, resulting in a ratio of under 1:7 staff to children, more than twice the 1:15 ratio required by the State. During the day, the children rotated from one group of counselors to another.

After lunch, Redd played cards in a lakeside pavilion with a counselor until 1:30 p.m. At that time Redd walked twenty-five yards to the lake edge where two other counselors were supervising a group of children who were fishing. The first

counselor saw him walking toward the other counselors, but apparently turned her back prior to Redd actually reaching the other two counselors. When DeAnzona arrived at 2:15 p.m. to pick up Redd, he could not be found. The next morning Redd's body was found in Ferril Lake.

Brooks is the manager of the Denver Department of Parks and Recreation, a governmental branch with a $57,000,000 budget and a 1400-person workforce. Brooks was only indirectly responsible for the SIP program. Brooks was not involved with policymaking for SIP, the daily operations of the program, the selection of any camp locations, the hiring of staff, the training of the staff, nor even the planning of that staff training. Brooks's sole contact with the SIP program was to greet the counselors at the beginning of their training program, long before the arrival of any children.

## II. JURISDICTION

"Orders denying qualified immunity before trial are appealable to the extent they resolve abstract issues of law." See Foote v. Spiegel, 118 F.3d 1416, 1422 (10th Cir. 1997). If the defendant argues that she is entitled to qualified immunity under the plaintiff's version of the facts because the plaintiff has not demonstrated a violation of clearly established law, this Court may properly exercise jurisdiction over an interlocutory appeal. See Johnson v. Martin, 195

F.3d 1208, 1214 (10th Cir. 1999). We exercise pendent jurisdiction over the substantive due process claims against Brooks and Denver because the review of Brooks's qualified immunity necessarily resolves these otherwise unappealable claims. See Moore v. Wynnewood, 57 F.3d 924, 930 (10th Cir. 1995). We review these issues of law de novo. See id. at 931. We have jurisdiction over the issue of governmental immunity to the state tort law claims because the district court granted DeAnzona's request for certification of final judgment pursuant to Federal Rule of Civil Procedure 54(b).

### III. QUALIFIED IMMUNITY

The district court denied Brooks qualified immunity even after finding she was not involved in either the planning or the day-to-day operations of the SIP program. We find the district court erred in denying Brooks's motion for summary judgment based on qualified immunity.

DeAnzona alleges Brooks should be personally liable because of seven failures: Brooks had a practice of not adequately training the counselors, not clearly defining the jobs of the counselors, not providing cellular phones for the counselors, not requiring children in the City Park camps be able to swim, not erecting a barricade around Ferril Lake, not having a system to identify the location of individual children at the camp at anytime, and not having a system to

differentiate campers from private individuals. In order to overcome the qualified immunity of a supervisor, a plaintiff most show that the defendant-supervisor took deliberate action in directing the constitutional violation, or had actual knowledge of the violation and allowed the violation to continue. See Jenkins v. Wood, 81 F.3d 988, 994-95 (10th Cir. 1996). "The better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998). The constitutional rights allegedly violated here are Redd's substantive due process rights. DeAnzona alleges a constitutional violation on two theories: 1) that a special relationship existed between Redd and Brooks triggering a duty on Brooks to protect Redd, or 2) that Brooks created an unreasonable dangerous condition, which caused Redd's death. See Armijo v. Wagon Mound Pub. Schs., 159 F.3d 1253, 1260 (10th Cir. 1998).

**A. Special Relationship**

A special relationship exists between Redd and Brooks only if Brooks restrained Redd's freedom to act, so that Redd was unable to protect himself. See id. at 1261. A plaintiff must show involuntary restraint by the government to have a claim under a special relationship theory, if there is no custodial relationship there can be no constitutional duty. See DeShaney v. Winnebago

-7-

County Dep't of Soc. Servs., 489 U.S. 189, 197 (1989). The Tenth Circuit has held repeatedly that because schools do not provide for a child's basic needs, schoolchildren do not have a special relationship with the government. See, e.g., Maldonado v. Josey, 975 F.2d 727, 732-33 (10th Cir. 1992). The state has a special relationship with only "individuals depend[ent] completely on the state to satisfy their basic human needs." Id. In the Tenth Circuit, the classic examples are prisoners, individuals committed against their will to mental institutions, and individuals in state run foster care. See id. Where the parents are still the primary care givers for the child there is no special relationship and no due process violation. See id. DeAnzona was still Redd's primary care giver, and Redd was not in the custody of the state. The district court attempted to distinguish this case from Maldonado and Armijo on the grounds that Redd was only five; however, while Reed's age may be a factor in whether the counselors were negligent, it is not a factor for whether a special relationship exists. In DeShaney, a boy of only four years was found not to have a special relationship with Winnebago County, even though the County had actual knowledge that he was being beaten and had had custody of the child approximately six months prior to the final beating that rendered the child profoundly retarded. See DeShaney, 489 U.S. at 193-97. There is no support for the district court's assertion that, based on age, five-year-old Redd had a special relationship with Brooks, when

-8-

four-year-old DeShaney had no special relationship with Winnebago Social Services. The district court's finding that there was a special relationship is reversed.

**B. Danger Creation**

When a plaintiff alleges a danger was created by the defendant, the "plaintiff must demonstrate that 1) Plaintiff was a member of a limited and specifically definable group; 2) Defendant's conduct put Plaintiff at substantial risk of serious, immediate, and proximate harm; 3) the risk was obvious or known; 4) Defendant acted recklessly in conscious disregard of that risk; and 5) such conduct, when viewed in total, is conscience shocking . . . [and 6)] defendant actors created the danger or increased the plaintiff's vulnerability to the danger in some way." Armijo, 159 F.3d at 1262-63. The fifth prong, requiring the conduct to be conscience shocking, is impossible to meet in the current case. This Court need not decide if Brooks was negligent because of her seven alleged shortcomings: the practice of 1) not adequately training the counselors, 2) not clearly defining the jobs of the counselors, 3) not providing cellular phones for the counselors, 4) not requiring children in the City Park camps be able to swim, 5) not erecting a barricade around Ferril Lake, 6) not having a system to identify the location of individual children at the camp at anytime, and 7) not having a system to differentiate campers from non-campers. Rather, Brooks's action must

shock our conscience. Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking. See Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995). The district court's finding that Brooks's supposed failures rose to the level of conscience shocking is in error.

Further, the fourth prong of the Armijo test requires action in reckless disregard for the risk. We have held "an act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk." Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1238 (10th Cir. 1999). We hold that Brooks's failure to enact the various policies, which DeAnzona suggests amount to a constitutional violation, does not rise to the level of complete indifference. Thus, DeAnzona has also failed the fourth prong of the Armijo test.

We hold that the district court erred by denying Brooks's motion for qualified immunity. DeAnzona had the burden of proving with specificity how Brooks violated Redd's clearly established right. See Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 517 (10th Cir. 1998). DeAnzona fails to meet this burden. Because Brooks did not commit a constitutional violation, she could not be denied qualified immunity. See id. at 516-17. Thus, we reverse the district court decision denying Brooks qualified immunity.

# IV. SUBSTANTIVE DUE PROCESS

The district court also denied both Brooks's and Denver's motions for summary judgment on claims of substantive due process violations. In the qualified immunity analysis, we have just held that Brooks committed no substantive due process violation. Thus, the district court also erred by not granting Brooks's motion for summary judgment on the substantive due process claim. We reverse the district court's denial of Brooks's summary judgment motion based on DeAnzona's failure to prove a constitutional violation. However, the question remains as to whether the district court erred by not granting summary judgment to Denver on the due process claims.

We hold that the district court erred in not granting Denver's motion for summary judgment on the due process claim. "[I]n order to hold a municipality liable for an employee's constitutional violations, a plaintiff must show not only that a constitutional violation occurred, but also that some municipal policy was the moving force behind the violation." Myers v. Oklahoma County Bd. of County Comm'rs, 151 F.3d 1313, 1320 (10th Cir. 1998) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)). DeAnzona alleges one other violation that we have not analyzed above, that is that the failure of the counselor in watching Redd until he joined the other counselors was a due process violation under the danger creation theory. We hold that it is not.

Allowing a child to walk to another counselor, less than thirty yards away, without confirming the other counselors see the child is risky, but there is no evidence that the counselor acted with a wanton disregard for that risk. Lack of diligence in watching a child walk twenty-five yards is not reckless disregard, as required by the fourth prong of Armijo. Furthermore, such action, while quite possibly negligent, does not rise to the level of conscience shocking as required by the fifth prong. Not paying enough attention to a child and thus allowing the child to wander away and drown is terribly tragic, and possibly even negligent. However, mere negligence does not shock the conscience. See DeShaney, 489 U.S. at 202. Finally, DeAnzona has presented no evidence that Denver increased the risk to Redd as required by the sixth prong of Armijo. See Armijo, 159 F.3d at 1263. Because DeAnzona cannot prove at least three, much less prove all six, of the required prongs of the danger creation test, she cannot prevail against Denver on her due process claim.

The district court erred by denying Brooks's and Denver's motions for summary judgment on the substantive due process claims. DeAnzona failed to prove the necessary elements for either a special relationship or danger creation theory of a due process violation. Because DeAnzona could not establish a constitutional violation, the district court erred by not granting summary judgment in favor of Brooks and Denver on the due process claim. This affair, while tragic,

is not a constitutional violation, but, as the district court stated, a negligence case. We reverse the district court and find no substantive due process violation.

## V. GOVERNMENTAL IMMUNITY

DeAnzona alleges the district court erred in finding the defendants immune from tort liability under the Colorado Governmental Immunity Act (GIA). In reviewing the GIA, the Colorado Supreme Court has "note[d] that immunity created by the GIA is in derogation of the common law and therefore must be strictly construed. . . . Further, appellate review of a trial court's factual findings on sovereign immunity issues under the GIA is to be conducted under a highly deferential, clearly erroneous standard." Hallam v. Colorado Springs, 914 P.2d 479, 481 (Colo. 1995) (internal cites omitted). However, all exceptions to the GIA should be interpreted broadly. See Walton v. Colorado, 968 P.2d 636, 643 (Colo. 1998). The district court did not err in finding the GIA rendered Denver immune from tort liability.

The GIA provides "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." Colo. Rev. Stat. § 24-10-106(1). DeAnzona alleges her claims fall within either of the two following exceptions:

Sovereign immunity is waived by a public entity in an action for injuries resulting from:

. . .

(e) A dangerous condition of any . . . public facility located in any park or recreation area maintained by a public entity, . . . . Nothing in this paragraph . . . shall be construed to prevent a public entity from asserting sovereign immunity for an injury caused by the natural condition of any unimproved property, whether or not such property is located in a park . . . .

(f) The operation and maintenance of any public water facility, gas facility, sanitation facility, electrical facility, power facility, or swimming facility by such public entity.

Colo. Rev. Stat. § 24-10-106(1). Neither exception is applicable in this case.

The dangerous condition exception of subsection (e) does not apply because there is no evidence that Ferril Lake presented a danger under the Act or that any danger that may have existed was unreasonable. Under the relevant Colorado law, a dangerous condition is defined as:

[A] physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health or safety of the public, which is known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility . . . . For the purposes of this subsection . . . , a dangerous condition should have been known to exist if it is established that the condition had existed for such a period of time and was of such a nature that, in the exercise of reasonable care, such condition and its dangerous character should have been discovered. A dangerous condition shall not exist solely because the design of any facility is inadequate. The mere existence of wind, water, snow, ice, or temperature shall not, by itself, constitute a dangerous condition.

-14-

Colo. Rev. Stat. § 24-10-103(1). A condition is dangerous "only if it relates to the physical or structural condition of the facility at issue." King v. United States, 53 F.Supp.2d 1056, 1070 (D. Colo. 1999).

The record is unclear as to whether Ferril Lake is manmade or natural. If Ferril Lake is natural, Denver is immune from liability because the natural condition of land, even within a park, cannot lead to a waiver of immunity. See Colo. Rev. Stat. § 24-10-106(1)(e); King, 53 F.Supp.2d at 1071. Even if the lake is manmade, the risk is not unreasonable. There is no evidence to suggest Ferril Lake has steep or particularly slippery shores that were constructed by Denver. The record shows that between 1987 and 1996, 3700 children attended various SIP camps, including the camps at City Park, and, aside from Redd's tragic death, there were no serious injuries of any kind, much less an injury involving the shores of Ferril Lake. Even if dangerous conditions did exist, DeAnzona had to show that Denver knew of the risk and either originally created the risk or negligently allowed the risk to continue. See Colo. Rev. Stat. § 24-10-103(1). Thus, we find that Denver did not waive immunity pursuant to subsection (e).

DeAnzona also claims that Ferril Lake is a public water facility or swimming facility under subsection (f), and thus immunity is waived. The facts simply do not support DeAnzona's claim. The term public water facility under Colo. Rev. Stat. § 24-10-103(1)(f) means a public utility to provide water to the

-15-

city, commonly known as the waterworks. This definition for public water facility is reinforced by the legislature having waived immunity for gas, sanitation, and electric facilities in the same subsection. Ferril Lake is simply not a public water facility within the meaning of the statute. See Colo. Rev. Stat. § 24-10-103(1)(f). Even more obvious, Ferril Lake is not a swimming facility. At no time did the camp allow the children to swim, no part of the lake was designated for swimming, there were no changing facilities, and there was no beach area suitable for swimming. Ferril Lake is simply not a swimming facility under any stretch of the facts. Any attempt to twist the common definitions of water facility and swimming facility are unconvincing, even construing the exceptions to government immunity broadly. Thus, we find that Denver did not waive immunity pursuant to subsection (f).

We hold that the district court properly dismissed all of DeAnzona's state law claims due to the immunity conferred by the GIA.


## VI. CONCLUSION

For the foregoing reasons, we REVERSE the district court's order denying Brooks qualified immunity, and REMAND with instructions to grant Brooks's motion for summary judgment based on qualified immunity. We also REVERSE the district court's order denying Denver's and Brook's motions for summary

-16-

judgment on DeAnzona's substantive due process claims, and REMAND with instructions to grant these two motions. Otherwise, we AFFIRM the district court's grant of summary judgment on the claims brought under state tort law.