NUMBER 13-05-516-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

FILOMENA LEO, ET AL., 

IN THEIR INDIVIDUAL AND OFFICIAL CAPACITIES,      Appellants,

 

                                           v.

 

ILIANA
TREVINO, ET AL.,                                         Appellees.

 

 

 

                  On appeal from the 398th
District Court

                           of Hidalgo
County, Texas.

 

 

 

                           O  P 
I  N  I 
O  N

 

        Before Chief Justice Valdez and Justices Rodriguez
and Castillo

                                  Opinion by Justice Castillo

 








Appellants
("School District Employees")[1]
bring this interlocutory appeal pursuant to section 51.014(a)(5) of the Texas
Civil Practice and Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(5) (Vernon
Supp. 2005).  The School District
Employees appeal from the trial court's denial of a no-evidence motion for
summary judgment based in whole or in part upon an assertion of immunity.  We sustain their issues concerning immunity,
reverse the trial court's order, and render summary judgment in favor of School
District Employees in their individual capacities.  See City of San Antonio v. Hernandez,
53 S.W.3d 404, 406 (Tex. App.BSan Antonio 2001, pet.
denied).  We dismiss that portion of the
appeal relating to the School District Employees' remaining issue for lack of
jurisdiction.  See Bexar County v.
Giroux-Daniel, 956 S.W.2d 692, 699 (Tex. App.BSan Antonio 1997, no pet.).

I.  Background

On May 20, 2003,
approximately two hundred eighth grade students from Cesar Chavez Middle
School, in the La Joya Independent School District ("La Joya ISD"),
went on a field trip to the McAllen Athletic Club.  Activities included swimming.  The School District Employees attended the
event to supervise the students.  The
school district opted not to hire lifeguards for the event.  Sometime during the day, eighth-grader Oscar
Guadalupe Trevino, Jr., drowned in the swimming pool at the club. 








Suit was filed on May
29, 2003, by appellees, Iliana Trevino and Oscar Guadalupe Trevino,
individually and as personal representative of the Estate of Oscar Guadalupe
Trevino, Jr. ("the Trevinos").[2]  Claims against the School District Employees
are based upon alleged civil rights violations under title 42 of the United
States Code, section 1983; the Trevinos claim that the School District
Employees violated Oscar's constitutional substantive due process rights to
life, liberty, and bodily integrity.  U.S. Const. amend. XIV; 42 U.S.C.A. ' 1983 (West 2003 &
Supp. 2005). 








On October 8, 2004,
after extensive discovery in the matter, the La Joya ISD and the School
District Employees jointly filed a no-evidence motion for summary judgment,
urging that the Trevinos had tendered no evidence of critical elements of their
claim, including (1) violation of a constitutionally protected right that was
(2) clearly established at the time of the conduct in question and that (3)
defendants had acted with deliberate indifference to that right.  The trial court order denying the no-evidence
motion for summary judgment was signed August 5, 2005.  This appeal is brought only by the School
District Employees, who contend the following: 
(1) suit against them in their official capacities is equivalent to
suing the La Joya ISD, already a named defendant, and therefore those claims
should be dismissed (second issue); and (2) as public officials sued in their
individual capacities, the School District Employees are entitled to qualified
immunity (third issue) unless the Trevinos establish that they violated
"clearly established constitutional law," which the Trevinos have
failed to do (first issue).  Therefore,
School District Employees urge that the trial court erred in failing to grant
the no-evidence motion for summary judgment in their favor.  Federal substantive law and Texas state
procedural law apply to this matter.

II.  Jurisdiction

Jurisdiction over this
interlocutory appeal is based upon section 51.014(a)(5) of the Texas Civil
Practice and Remedies Code and the assertion of qualified immunity.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(5) (Vernon Supp. 2005).  This statute provides that an interlocutory
appeal may be taken from the denial of a motion for summary judgment where the
defense of qualified immunity has been raised by individuals who are officers
or employees of the state or a political subdivision of the state.  Id.; Houston v. Kilburn, 849
S.W.2d 810, 811 (Tex. 1993) (per curiam). 

The Trevinos contend
that the School District Employees sought summary judgment on grounds beyond
immunity, including (1) whether there was a violation of a federal protected
right and (2) whether suit could proceed against both La Joya ISD and the named
individuals in their official capacity. 
The Trevinos urge that, inasmuch as argument was not limited to the
issue of immunity, we do not have jurisdiction over the bulk of this appeal.  In conjunction with qualified immunity from
the section 1983 claims, the Trevinos also contend that we may not properly
reach whether or not there was violation of a federal protected right. 

 








A.  Qualified Immunity under Section 1983

Claims raised by the
Trevinos against the School District Employees are based solely upon alleged
violations of constitutionally protected rights of due process.  See 42 U.S.C. ' 1983 (West 2003 &
Supp. 2005).  School District Employees
assert that qualified immunity precludes suit against them in their individual
capacities for these claims.  Government
officials performing discretionary functions are clothed with a qualified
immunity, shielding them from civil damages liability for violation of a
constitutional right as long as their actions could reasonably have been
thought to be consistent with the rights they are alleged to have
violated.  Anderson v. Creighton,
483 U.S. 635, 638 (1987); Spacek v. Charles, 928 S.W.2d 88, 92 (Tex.
App.BHouston [14th Dist.]
1996, writ dism'd w.o.j.).

The availability of
interlocutory appeal to address the defense of qualified immunity does not
distinguish between claims brought under federal or state law.  Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(5) (Vernon
Supp. 2005).  It is simply available from
the denial of a motion for summary judgment "that is based on an assertion
of immunity" by an appropriate state actor.  Id. 
An assertion of immunity is a defense, rather than an element of the
principal cause of action.  Id.  








When a federal claim
is brought under section 1983, title 42 of the United States Code, availability
of qualified immunity as a defense must be assessed pursuant to federal law.  42 U.S.C. ' 1983 (West 2003 & Supp. 2005); Doe v.
Taylor Indep. Sch. Dist., 15 F.3d 443, 450 (5th Cir. 1994) (op. on
reh'g).  Federal courts recognize a
qualified immunity for public officials which is analogous although not
identical to Texas's official immunity. 
Qualified immunity to a claim brought under section 1983 protects
governmental officers with discretionary authority from liability so long as
their conduct does not violate clearly established statutory or constitutional
rights of which a reasonable person would have known.  Ballantyne 
v. Champion Builders, Inc., 144 S.W.3d 417, 428 (Tex. 2004) (quoting
Crawford‑El v. Britton, 523 U.S. 574, 588 (1998); Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982)). 
Section 1983 imposes liability for violations of rights protected by the
United States Constitution, not for violations of duties of care arising under
tort law.  Taylor Indep. Sch. Dist.,
15 F.3d at 450 (citing Baker v. McCollan, 443 U.S. 137, 146 (1979)).  Therefore, the threshold inquiry in any
section 1983 claim is whether the plaintiff has been deprived of a right
secured by the Constitution.  Siegert
v. Gilley, 500 U.S. 226, 232 (1991); see Taylor Indep. Sch. Dist., 15
F.3d at 450 (stating the first step in deciding whether defendants are entitled
to qualified immunity is to determine whether Constitutional rights were
violated).  

1.  The Burden of Proof Under Section 1983

Qualified immunity is
an affirmative defense which normally carries with it the burden of proof.  Generally, a no-evidence motion for summary
judgment asserting that a party can prevail on an affirmative defense is not
appropriate.  See Keszler v. Mem'l
Med. Ctr. of E. Tex., 105 S.W.3d 122, 128 (Tex. App.BCorpus Christi 2003,
no pet.). 








However, under federal
law and section 1983 claims, such is not the case.  At the summary judgment stage of a section
1983 action, "a defendant asserting immunity is not required to establish
the defense beyond peradventure, as he would have to do for other affirmative
defenses."  Cousin v. Small,
325 F.3d 627, 632 (5th Cir. 2003) (per curiam). 
"The moving party is not required to put forth evidence to meet its
summary judgment burden for a claim of immunity.  It is sufficient that the movant in good
faith pleads that it is entitled to absolute or qualified immunity."  Id. (quoting Beck v. Tex. State Bd.
of Dental Examiners, 204 F.3d 629, 633 (5th Cir. 2000)).[3]  "Once the [movant] asserts this
affirmative defense, the burden shifts to the plaintiff to rebut it." Id.
(citing Beck, 204 F.3d at 633‑34; Whatley v. Philo, 817
F.2d 19, 20 (5th Cir. 1987)).  Therefore,
a no-evidence motion for summary judgment is sufficient to raise this
defense.  

2.  Application of Federal Substantive Law








The Trevinos contend
that it is error to apply the federal burden-shifting analysis to assess
availability of qualified immunity.  They
argue that immunity is an affirmative defense under Texas state law, for which
School District Employees at all times bore the burden of proof.  The Trevinos urge that we should therefore
not apply the provisions for burden-shifting set out under federal law, and,
consequently, we never reach the question of whether Oscar was deprived of a
right secured by the Constitution. 
However, in any analysis involving section 1983 constitutional due
process claims, applicability of the burden-shifting analysis for qualified
immunity is a matter of federal substantive law.  Amer. Dredging Co. v. Miller, 510 U.S.
443, 454 (1994). 

"When sued in his
individual capacity, a governmental employee is entitled to a presumption of
qualified immunity from suit."  Mossey
v. City of Galveston, 94 F. Supp.2d 793, 796 (S.D. Tex. 2000).   Presumptions (and their effects) and burden
of proof are "substantive."  Dick
v. New York Life Ins. Co., 359 U.S. 437, 446 (1959); see Raleigh v. Ill.
Dep't of Revenue, 530 U.S. 15, 20-21 (2000) ("[W]e have long held the
burden of proof to be a 'substantive' aspect of a claim.").  Although "[i]n earlier times, burden of
proof was regarded as 'procedural,' . . . [f]or many years, . . . it has been
viewed as a matter of substance . . . [and] cannot be considered a mere
incident of a form of procedure."  Amer.
Dredging Co., 510 U.S. at 454 (citations omitted).  

We have jurisdiction
over that portion of the appeal relating to qualified immunity to section 1983
claims brought against the School District Employees which allege violations of
constitutional rights.  See Univ. of
Tex. S.W. Med. Ctr. v. Margulis, 11 S.W.3d 186, 188 (Tex. 2000) (per
curiam); Gross v. Innes, 988 S.W.2d 727, 729 (Tex. 1998) (per
curiam).  In conjunction therewith, we
reject the Trevinos' contention that we have no jurisdiction to consider
whether or not there was a violation of a constitutionally protected right,
inasmuch as such an inquiry is critical to an evaluation of the existence of
qualified immunity under section 1983.  Cousin,
325 F.3d at 632. 

B.  Official Immunity








The Trevinos contend
that we have no jurisdiction to consider the trial court's order as it applies
to considerations beyond the assertion of an immunity defense.  The School District Employees assert in their
second issue that we may address contentions in the no-evidence motion for
summary judgment that suit against the School District Employees in their
official capacities is not viable because it is equivalent to suing the La Joya
ISD, already a named defendant.  

These contentions are
not based upon a defense of immunity, but rather upon an argument that because
damages cannot be recovered against these individuals in their official
capacities, these claims should have been dismissed.  "Suits against a government employee in
his or her official capacity are just another way of pleading a suit against
the government entity of which the official is an agent.  Accordingly, qualified immunity is not at
issue when a government employee is sued in his or her official capacity."
 Giroux-Daniel, 956 S.W.2d at 695.

We have no
jurisdiction to consider the denial of a no-evidence motion for summary
judgment as to claims against the School District Employees in their official
capacities.  See id.  We therefore have no jurisdiction to consider
School District Employees' second issue on appeal. 

III.  Standard of Review








Summary judgment
functions to eliminate patently unmeritorious claims and defenses, not to
deprive litigants of the right to a jury trial.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 n.5 (Tex. 1979); Swilley v. Hughes, 488 S.W.2d 64,
68 (Tex. 1972); Alaniz v. Hoyt, 105 S.W.3d 330, 344 (Tex. App.BCorpus Christi 2003,
no pet.).  Here, School District
Employees filed a no-evidence motion for summary judgment.  This type of motion generally asserts that
there is no evidence of one or more essential elements of a claim on which the
adverse party will bear the burden of proof at trial.  Tex.
R. Civ. P. 166a(i); Alaniz, 105 S.W.3d at 344; Scripps Tex.
Newspapers, L.P. v. Belalcazar, 99 S.W.3d 829, 840 (Tex. App.BCorpus Christi 2003,
pet. denied). 








However, such a motion
may also be appropriate where the defense of qualified immunity is raised to a
federal claim under federal law.[4]  Although the term "qualified
immunity" is sometimes used to describe other types of immunity possessed
by government officials, including those sued under the Texas Tort Claims Act,
in this case the motion for summary judgment properly refers only to the claims
raised under section 1983.  See
Giroux-Daniel, 956 S.W.2d at 694 n.2. 
The Trevinos specifically provide in their petition that "these
allegations are only brought under 42 U.S.C. ' 1983." 
We have already determined that when section 1983 claims are raised, the
presumption arising in conjunction with a claim for qualified immunity is a
matter of federal substantive law.  Amer.
Dredging Co., 510 U.S. at 454.  That
presumption provides that the moving party is not required to put forth
evidence to meet its summary judgment burden for a claim of immunity.  Id.; Beck, 204 F.3d at 633-34
(citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992)); see
Mossey, 94 F. Supp.2d at 796.  The
movant can support its motion by solely relying on the pleadings.  Beck, 204 F.3d at 634.  Accordingly, School District Employees'
challenge to the section 1983 claims can properly be raised in a no-evidence
motion for summary judgment.  

"An order denying
qualified immunity, to the extent it turns on an 'issue of law,' is immediately
appealable."  Atteberry v. Nocona
Gen. Hosp., 430 F.3d 245, 251 (5th Cir. 2005) (quoting Behrens v.
Pelletier, 516 U.S. 299, 311 (1996)). 
The denial of a motion for summary judgment based on qualified immunity
grounds falls into that

"small
class" of district court decisions which, though short of final judgment,
are immediately appealable because they "finally determine claims of right
separate from, and collateral to, rights asserted in the action, too important
to be denied review and too independent of the cause itself to require that
appellate consideration be deferred until the whole case is
adjudicated."  

 

Id. (quoting Behrens,
516 U.S. at 305).  When reviewing a denial
of qualified immunity on an interlocutory appeal, we are restricted to
determining "questions of law" and "legal issues."  Atteberry, 430 F.3d at 251.  We do not consider the "correctness of
[appellee's] version of the facts." 
Id.  We treat the legal
question of immunity as "distinct from the merits of the case."  Id. at 251-52.  We review the refusal to grant a motion for
summary judgment based on this defense de novo. 
Id. at 252 (citing Wilkerson v. Stalder, 329 F.3d
431, 434 (5th Cir. 2003)).  In applying
this standard, we accept "all well-pleaded facts as true, viewing them in
the light most favorable to the plaintiff."  Id. (citing Jones v. Greninger,
188 F.3d 322, 324 (5th Cir. 1999) (per curiam)).  

IV.  Analysis

 








The
School District Employees urge they are entitled to qualified immunity from the
Trevinos' claims, absent a showing of a violation of "clearly established
constitutional law."  Anderson,
483 U.S. at 640.  

Government officials
performing discretionary functions are protected from civil liability under the
doctrine of qualified immunity if their conduct violates no "clearly
established statutory or constitutional rights of which a reasonable person would
have known."

 

Beck, 204 F.3d at
638.  Claims of qualified immunity are
reviewed under a two-step analysis.  Atteberry,
430 F.3d at 253.  First, we review
whether the plaintiff has asserted the violation of a clearly established
constitutional right.  Id.  If so, we then decide whether the defendant's
conduct was objectively reasonable.  Id.
 Atteberry provides:

When a defendant
invokes qualified immunity, the burden is on the plaintiff to demonstrate the
inapplicability of the defense.  To
discharge this burden, a plaintiff must satisfy a two-prong test.  First, he must claim that the defendants
committed a constitutional violation under current law.  Second, he must claim that the defendants'
actions were objectively unreasonable in light of the law that was clearly
established at the time of the actions complained of.  

 

Id.; see Beck,
204 F.3d at 628 (citing Coleman v. Houston Indep. Sch. Dist., 113 F.3d
528, 533 (5th Cir. 1997)).  A preliminary
consideration is whether or not the government official was acting within his
discretionary as opposed to his ministerial authority at the time of the
incident.  

A.  Discretionary Authority








Qualified
immunity is only available when an official acts "within the scope of [his
or her] discretionary authority."  Atteberry,
430 F.3d at 257.  In Atteberry,
as here, the plaintiffs alleged the violation of numerous state statutes which
imposed non-discretionary, ministerial duties upon School District Employees,
thereby vitiating their defense of qualified immunity.  See id.  

The
Trevinos contend that qualified immunity is not available because School
District Employees violated former section 22.051 of the Texas Education Code,[5]
renumbered and currently codified as section 22.0511.[6]  This statute provides that a professional
employee of a school district, defined to include teachers, counselors, nurses,
and administrators, is not personally liable for any act that is: 

. . . incident to or
within the scope of the duties of the employee's position of employment and
that involves the exercise of judgment or discretion on the part of the
employee, except in circumstances in which a professional employee uses
excessive force in the discipline of students or negligence resulting in bodily
injury to students. 

 

Tex. Educ. Code Ann. ' 22.0511 (Vernon Supp. 2005) (emphasis added).[7]









"Discretionary
authority exists when the law does not specify the precise action that the
official must take."  Finlan v.
Dallas Indep. Sch. Dist., 90 S.W.3d 395, 409 (Tex. App.BDallas 2002, pet.
denied) (citing Davis v. Scherer, 468 U.S. 183, 196 n.14 (1984)).  "An act is discretionary under Texas law
if it requires personal deliberation, decision, and judgment."  Id. (citing Jolly v. Klein, 923
F. Supp. 931, 948 (S.D. Tex. 1996)); see Downing v. Brown, 935
S.W.2d 112, 114 (Tex. 1996) (per curiam). 
By contrast, an act is ministerial "where the law prescribes and
defines the duties to be performed with such precision and certainty as to
leave nothing to the exercise of discretion or judgment."  Downing, 935 S.W.2d at 114 (quoting City
of Lancaster v. Chambers, 883 S.W.2d 650, 654 (Tex.1994)); Rosencrans v.
Altschuler, 161 S.W.3d 517, 521 (Tex. App.BEastland 2004, no pet.).  Ministerial actions require obedience to
orders or the performance of a duty to which the actor has no choice.  Rosencrans, 161 S.W.3d at 517
(emphasis added).  Additionally, the
claims in issue here, although couched solely in terms of violation of
constitutional rights, include allegations that the School District Employees
committed those violations because they failed to properly supervise and/or
discipline Oscar on the field trip.  








In our view,
maintaining classroom discipline involves personal deliberation, decision and
judgment.  Moreover, . . . teachers'
responsibilities [are not defined] with such precision to leave nothing to the
exercise of a teacher's judgment or discretion. 

 

Downing, 935 S.W.2d at
114.  The contents and substance of a
discipline management plan, selection of disciplinary techniques, evaluation of
which student misconduct should result in disciplinary sanctions, decisions as
to how or when to discipline students or to refer them to higher administrative
personnel, and other such decisions are "routinely" left to teachers,
and "require the use of professional judgment and discretion."  Id. 
Moreover, the fact that a teacher is required to attend an event,
including a field trip, does not alter the fact that this supervision and
discipline lie within discretionary authority. 
Williams v. Chatman, 17 S.W.3d 694, 699 (Tex. App.BAmarillo 1999, pet.
denied).  Even where it is undisputed
that there was a "mandatory duty to supervise," the "duty to
supervise involves the exercise of judgment or discretion."  Id. at 700 (concluding that qualified
immunity can apply to claims related to failure to properly supervise).  We conclude the School District Employees
were acting within the scope of their discretionary authority at the time of
the incident.  

B. Constitutional Violation

The
first prong of any analysis of the availability of qualified immunity requires
the establishment of the violation of a "clearly established
right."  Beck, 204 F.3d at
638. 








[The due process
clause of the Fourteenth Amendment] is phrased as a limitation on the State's
power to act, not as a guarantee of certain minimal levels of safety and
security.  It forbids the State itself to
deprive individuals of life, liberty, or property without "due process of
law," but its language cannot fairly be extended to impose an affirmative
obligation on the State to ensure that those interests do not come to harm
through other means.

 

DeShaney v. Winebago
County Dept. of Social Servs., 489 U.S. 189, 196 (1989).  The due process clause "does not require
the State to provide its citizens with particular protective services, [and] it
follows that the State cannot be held liable under the Clause for injuries that
could have been averted had it chosen to provide them."  Id. at 196-97.  As a general matter, a state actor's failure
to protect an individual against private violence simply does not constitute a
violation of the due process clause.  Id.

Nevertheless,
there are recognized exceptions to this general rule, including (1) the
"special relationship" exception and (2) the "state created
danger" exception.  In conjunction
with these exceptions, the Trevinos urge that the School District Employees
were "deliberately indifferent" or conducted improper supervision. 

1.  Special Relationship Exception

The
"special relationship" exception arises only where "the state,
by affirmative exercise of power, has custody over an individual involuntarily
or against his will."  Walton v.
Alexander, 44 F.3d 1297, 1303 (5th Cir. 1995) (en banc).  Any "affirmative duty to protect arises
not from the State's knowledge of an individual's predicament or from its
expressions of intent to help him, but from the limitation which it has imposed
on his freedom to act on his own behalf." 
DeShaney, 489 U.S. at 200. 








In the substantive due
process analysis, it is the State's affirmative act of restraining the
individual's freedom to act on his own behalfBthrough incarceration, institutionalization, or
other similar restraint of personal libertyBwhich is the "deprivation of liberty"
triggering the protections of the Due Process Clause, not its failure to act to
protect his liberty interests against harms inflicted by other means. 

 

Id.  In Walton, a special relationship was
found to exist because (1) the child attended a boarding school with
twenty-four hour custody of the student, (2) the student was deaf and lacked
basic communications skills, (3) the student was obviously not free to leave
while he lived at the school, and (4) economic realities forced most
Mississippi families with deaf children to send their children to the
school.  Walton, 44 F.3d at
1355.  The court found that the
residential special education program created a significant custodial component
wherein Walton was dependent on the school for his basic needs and lost a
substantial measure of his freedom to act. 
Id.  Such is not the case
here.

Indeed,
the courts consistently "decline to hold that compulsory attendance laws
alone create a special relationship giving rise to a constitutionally rooted
duty."  Doe v. Hillsboro Indep.
Sch. Dist., 113 F.3d 1412, 1415 (5th Cir. 1997) (en banc).

We join every circuit
court that has considered the issue in holding that compulsory school attendance,
in Texas to attend seven hours of programmed education on each school day, does
not create the custodial relationship envisioned by DeShaney.  The restrictions imposed by attendance laws
upon students and their parents are not analogous to the restraints of prisons
and mental institutions.

 








Id.  Moreover, "[i]t is well‑settled
that a state's failure to protect an individual against private violence simply
does not constitute a violation of the Due Process Clause."  Leffall v. Dallas Indep. Sch. Dist.,
28 F.3d 521, 526 (5th Cir. 1994) (quoting DeShaney, 489 U.S. at 197)
(rejecting claims that the state was categorically obligated to provide a
student, who was injured in a random shooting, with protection from injury
outside the school dance).  Importantly,

Section 1983 imposes
liability for violations of rights protected by the Constitution, not for
violations of duties of care arising out of tort law.  To state a cause of action under ' 1983 for violation of
the Due Process Clause, plaintiffs must show that they have asserted a
recognized liberty or property interest within the purview of the Fourteenth
Amendment, and that they were intentionally or recklessly deprived of that
interest, even temporarily, under color of state law.  

 

Taylor Indep. Sch.
Dist.,
15 F.3d at 450 (citations omitted).  Such
due process rights have been found to have been violated where a teacher lashed
a second-grade student to a chair for the better part of two days, see Jefferson
v. Isleta Indep. Sch. Dist., 817 F.2d 303, 305 (5th Cir. 1987), and where
corporal punishment was inflicted in a public school in an arbitrary or
capricious manner, "wholly unrelated to the legitimate state goal of
maintaining an atmosphere conducive to learning."  Fee v. Herndon, 900 F.2d 804, 808 (5th
Cir. 1990).  








"The
special relationship doctrine is properly invoked in cases involving harms
inflicted by third parties, and it is not applicable when it is the conduct of
a state actor that has allegedly infringed a person's constitutional
rights."  Leffall, 28 F.3d at
538 (citing Taylor Indep. Sch. Dist., 15 F.3d at 450).  No constitutional due process rights under
section 1983 are triggered absent the type of custodial "special"
relationship that infringes on rights.  See
DeAnzona v. City and County of Denver, 222 F.3d 1229, 1234 (10th Cir.
2000), which involved the drowning of a five-year-old participating in a summer
day-camp program.  An inadequate number
of counselors were supervising the children, in violation of state requisites.  Id. at 1233.  Plaintiffs in that case alleged similar
violations of constitutional rights; some of the defendants argued they were
entitled to qualified immunity because there had been no showing of the
violation of a clearly established right. 
Id. at 1233-34.  

As
here, the DeAnzona plaintiffs alleged inadequate or no training,
inadequate provision of cell phones, no requirement that persons participating
be able to swim, and inadequate system of supervision and other failures.  Id. 
The court nevertheless reiterated that a plaintiff "must show
involuntary restraint by the government to have a claim under a special
relationship theory; if there is no custodial relationship there can be no
constitutional duty."  Id. at
1234 (citing DeShaney, 489 U.S. at 197). 
Because schools do not provide for a child's basic needs, school
children do not have the requisite "special relationship" with the
government.  Id.[8]  Similarly, in Bradberry v. Pinellas County,
789 F.2d 1513, 1517 (11th Cir. 1986), in issue was the federal court's
dismissal of a claim brought under section 1983 subsequent to a drowning, in
which allegations included inadequate training of lifeguards.  The court observed:

[A] local governmental
body does not deprive a person of his right to life for purposes of 42 U.S.C. ' 1983 when it grossly
negligently trains one of its agents . . . . 
The Constitution, as opposed to local tort law, does not prohibit
grossly negligent rescue attempts nor even the grossly negligent training of
state officers.  Rather, it prohibits the
deprivation of life, liberty, or property without due process of law.  Although the state might be prohibited by the
Due Process Clause from actively taking the life of a citizen through grossly negligent
behavior, we do not believe that due process is implicated when the state fails
to help someone already in danger. . . . 
We decline to take such an extreme step.








Id. at 1517; see
Rankin v. City of Wichita Falls, Texas, 762 F.2d 444, 449 (5th Cir. 1985)
(involving a complaint for grossly negligent customs and practices and safety
deficiencies that resulted in a death). 
The Rankin court found no cause of action under section 1983
because the complaint failed to allege "the abuse of any peculiar
authority or obligation held by the government," or the "sort of
abuse of government power necessary to elevate an ordinary tort claim to
constitutional status."  Rankin,
762 F.2d at 449.  We similarly decline to
take such a step, and conclude there was no special relationship of the
requisite type to create a constitutional duty on the part of the School
District Employees to safeguard Oscar against potential harm.

2.  State-Created Danger
Exception

The
Fifth Circuit has never adopted the state-created danger exception for claims
brought under section 1983.  Scanlan
v. Tex. A & M Univ., 343 F.3d 533, 537 (5th Cir. 2003).  Nevertheless, it recognizes the elements of
the doctrine:  "a plaintiff must
show the defendants used their authority to create  a dangerous environment for the plaintiff and
that the defendants acted with deliberate indifference to the plight of the
plaintiff."  Id. at
537-38 (quoting Johnson v. Dallas Indep. Sch. Dist., 38 F.3d 189, 201
(5th Cir. 1994)).  The "environment
created by the state actors must be dangerous; they must know it is dangerous;
and . . . they must have used their authority to create an opportunity that
would not otherwise have existed for the third party's crime to occur."  Id. at 538 (quoting Piotrowski v.
City of Houston, 237 F.3d 567, 585 (5th Cir. 2001)).  













The
sixth circuit outlines three important requirements that must be satisfied
before the state-created danger exception is applicable:  an affirmative act that creates or increases
the risk, a special danger to the victim as distinguished from the public at
large, and the requisite degree of state culpability.  McQueen v. Beecher Cmty. Sch., 433
F.3d 460, 464 (6th Cir. 2006).  As to the
first prong, "[l]iability under the state‑created‑danger
theory is predicated upon affirmative acts by the state which either create or
increase the risk that an individual will be exposed to private acts of
violence."  Id. (emphasis
added) (noting numerous instances where claims were rejected because the
challenged conduct either was not an affirmative act at all or did not create
or increase the risk of private violence to the plaintiff).  In addition to the affirmative act, for a
"special danger" to exist, "the state's action [must have
placed] the victim specifically at risk, as distinguished from a risk that
affects the public at large."  Id.
at 468 (noting this is a "high bar"). 
Even where this element may be satisfied, a plaintiff must still show
that "state must have known or clearly should have known that its actions
specifically endangered an individual." 
Id. at 469.  This requires
egregious conduct rising to a level of "deliberate indifference;"
this "deliberate indifference" is equated with "subjective
recklessness."  Id.  This means that the official "must both
be aware of facts from which the inference could be drawn that a substantial
risk of serious harm exists, and he must also draw the inference."  Id. (emphasis added).  The plaintiff must demonstrate that the state
official acted with culpability clearly beyond that of mere negligence.  McClendon v. City of Columbia, 305
F.3d 314, 324 (5th Cir. 2002) (en banc) (per curiam).  "Only the most egregious official
conduct can be said to be arbitrary in the constitutional sense."  Id. at 236 (citing County of
Sacramento v. Lewis, 523 U.S. 833, 846 (1998)).  The behavior must rise to a level that
"shocks the conscience;" the due process guarantee "does not
entail a body of constitutional law imposing liability whenever someone cloaked
with state authority causes harm."  Id.
(citing Lewis, 523 U.S. at 848). "Liability for negligently
inflicted harm is categorically beneath the threshold of constitutional due
process."  Id.[9]








The
Trevinos contend that the failure of the School District Employees to properly
monitor and supervise the situation was so egregious and grossly negligent that
it did amount to deliberate indifference to Oscar's constitutional rights under
section 1983.[10]  However, "to act with deliberate
indifference, a state actor must know [of and disregard] an excessive risk to
[the victim's] health or safety."  Id.
(citing Ewolski v. City of Brunswick, 287 F.3d 492, 513 (6th
Cir. 2002); Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  The court in McClendon concluded that
while conduct of the officer in question was certainly "inadvisable,"
there was no evidence in the record suggesting that he acted with knowledge
that his conduct would pose a threat to the plaintiff's safety, and in the
circumstances, "no rational trier of fact could find that [he] acted with
any level of culpability beyond mere negligence."  Id. 
There was therefore no violation of substantive due rights and the
officer was entitled to summary judgment on the grounds of qualified
immunity.  Id. 








Here,
we are faced with allegations that, if true, could certainly be found by a
rational trier of fact to constitute negligence.  However, to say that the conduct constitutes
"deliberate indifference" would require us to conclude that the
School District Employees knew of and deliberately disregarded an excessive
risk to the Oscar's health or safety.  See
id. at 324.  We cannot conclude that
the conduct was so severe as to reach the level of "shocking the
conscience" contemplated by the Supreme Court.  See Farmer, 511 U.S. at 837.[11]  We further decline to do so where the Fifth
Circuit has consistently recognized:

A state actor's
failure to alleviate "a significant risk that he should have perceived but
did not," while "no cause for commendation," does not rise to
the level of deliberate indifference.

 

McClendon, 305 F.3d at 326 n.8
(citing Farmer, 511 U.S. at 837).[12]  We decline to find that the requisites for a
state-created danger exception have been satisfied.

We
are cognizant of the Trevinos' argument that liability should be imposed based
on a policy of inaction and deliberate indifference which resulted in a
deprivation of Oscar's "constitutional" right to life.  We have already rejected the argument that
the conduct involved by the individual School District Employees constituted
"deliberate indifference" as that term is understood by the United
State Supreme Court and the Fifth Circuit Court of Appeals.  Farmer, 511 U.S. at 837; McClendon,
305 F.3d at 326.  We further note:








Respondeat superior is
not a proper basis for liability under ' 1983.  Nor can the liability of supervisors be based
solely on the right to control employees, or "simple awareness of
employees' misconduct." 
Furthermore, "a supervisory official's failure to supervise,
control or train the offending individual is not actionable unless the
supervisor 'either encouraged the specific incident of misconduct or in some
other way directly participated in it.' 
At a minimum a plaintiff must show that the [supervisor] at least
implicitly authorized, approved, or knowingly acquiesced in the
unconstitutional conduct of the offending officers." . . . [Further, a]
prerequisite of supervisory liability under ' 1983 is unconstitutional conduct by a subordinate
of the supervisor.

 

McQueen, 433 F.3d at 470
(citations omitted).

School
officials performing discretionary functions are protected from civil liability
under the doctrine of qualified immunity unless there is the violation of a
clearly established constitutional right. 
Beck, 204 F.3d at 638. 
Here, we have neither the requisite custodial relationship nor a
state-created danger that would open the door to any exception to this general
rule.  We conclude that the School
District Employees properly raised a good faith plea of entitlement to
qualified immunity under section 1983, and that, pursuant to federal
substantive law, they were not required to put forth evidence in support of
that claim.  Cousin, 325 F.3d at
632 (citing Beck, 204 F.3d at 633). 
Once the School District Employees raised this affirmative defense, the
burden shifted to the Trevinos to rebut it. 
Id.  The School District
Employees are entitled to qualified immunity from the Trevinos' claims, absent
a showing of a violation of "clearly established constitutional
law."  Anderson, 483 U.S. at
640; Beck, 204 F.3d at 638.  We
conclude that the Trevinos have failed in their burden to show a violation of
clearly established constitutional law.  

 








C.  Reasonableness of Conduct

Claims
of qualified immunity are reviewed under a two-step analysis.  First, we review whether the plaintiff has
asserted the violation of a clearly established constitutional right.  Only if we find such a violation do we then
consider whether the defendant's conduct was objectively reasonable in light of
the constitutional right.  Beck, 204
F.3d at 638 (citing Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528,
533 (5th Cir. 1997)).  Because we have
found no such violation, we do not consider reasonableness of the conduct.  We sustain the School District Employees'
first and third issues on appeal. 

V.  Conclusion

We
sustain School District Employees' first and third issues concerning immunity,
reverse the trial court's order, and render summary judgment in favor of the
School District Employees in their individual capacities only.  See Hernandez, 53 S.W.2d at 406.  We dismiss that portion of the appeal dealing
with the School District Employees' second issue, relating to claims against
them in their official capacities, concluding we do not have jurisdiction over
it.  See Giroux-Daniel, 956 S.W.2d
at 699.

 

ERRLINDA CASTILLO      

Justice

Opinion delivered and
filed

this the 8th day of
June, 2006.

 

 

 











[1] Appellants include Filomena Leo,
Daniel Villarreal, Cesar Ramirez, Lucercio Flores, Ruben F. Farias, Arturo
Gonzalez, Jr., Joe Aguilar, Carmen Ramirez, Elma Garza, Annie Aranguren, Max
Diaz, Juan Ochoa, Leonel Peña, Nora Garza, Aida Torres, Luz Alicia Resendez, Lionel
Perez, Ruth Winkler, Rosa Cardenas, Salvador Magaña, Rosario Alaniz, Jose
Garcia and Max Perez, in their individual and official capacities.  All are employees of the La Joya Independent
School District ("La Joya ISD").





[2] Other defendants, not parties to
this appeal, are also named in the suit and include the La Joya ISD, the
athletic club and many of its personnel, as well as the company charged with
pool services for the club.  





[3] Qualified immunity serves to
"shield a government official from civil liability for damages based upon
the performance of discretionary functions if the official's acts were
objectively reasonable in light of then clearly established law." Thompson
v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001).  Where a defendant pleads qualified immunity,
the burden of proof shifts to the plaintiff. 
See Pierce v. Smith, 117 F.3d 866, 872 (5th Cir. 1997). 





[4] If qualified immunity were raised
in response to a claim raised under Texas law, a traditional summary judgment
motion would raise this affirmative defense. 
Summary judgment for a defendant is proper when the summary judgment
evidence negates an essential element of the plaintiff's cause of action as a
matter of law or conclusively establishes all elements of an affirmative
defense as a matter of law.  See Black
v. Victoria Lloyds Ins. Co, 797 S.W.2d 20, 27 (Tex. 1990).  In such circumstances, the government
official would be required to conclusively prove each element of the
affirmative defense.  Univ. of Houston
v. Clark, 38 S.W.3d 578, 580 (Tex. 2000).





[5] The Trevinos indicate in their petition that this is
a "pre-HB4 case."  See Act
of May 27, 1995, 74th Leg., R.S., ch. 260, '1, section 22.051,1995 Tex. Gen. Laws 2207, 2283.  





[6] Tex. Educ. Code Ann. ' 22.0511 (Vernon Supp. 2005).  See Act of June 2, 2003 (also known as
"HB4"), 78th Leg., R.S., ch. 204, ' 15.01, 2003 Tex. Gen. Laws 847, 890; Act of May 29, 2003,
78th Leg. R.S. ch. 1197, '1, 2003 Tex. Gen. Laws 3404.  





[7] The immunity afforded by section
22.0511 of the education code requires that the person asserting it establish
four elements: (1) he or she is a professional employee of a school district,
(2) acting incident to or within the scope of duties, (3) which involve the
exercise of judgment or discretion, and (4) are not within the stated
exceptions.  See Williams v. Chatman,
17 S.W.3d 694, 699 (Tex. App.BAmarillo 1999, pet. denied).  However, in their petition, the Trevinos
couch all their claims under section 1983. 
See 42 U.S.C. ' 1983 (West 2003 & Supp. 2005).  They allege that qualified immunity does not
apply because the employees' negligent discipline of Oscar resulted in bodily
injury.  That negligence is alleged to
include (1) failure to discipline Oscar for being in the pool without
supervision, (2) negligent discipline of Oscar in a manner that failed to
prevent his drowning, (3) negligent discipline of Oscar for failing to make him
stay with other students at all times, and (4) negligent discipline of Oscar
for failing to require him to be in a proper location at the club at all
times.  The Trevinos also contend in
their petition that immunity from liability does not attach based upon other
duties derived from state law that allegedly involve mandatory or ministerial
activities, including:  (1) supervisory
and disciplinary responsibilities under education code sections 37.008(h)
(dealing with disciplinary alternative education programs) and 37.0021(d)
(dealing with confinement, restraint, seclusion, and time-outs for students
receiving special education services), (2) the duty to remove a child from or
not place him in a situation that involves substantial risk of immediate harm under
section 261.001 of the family code, and (3) the reporting of child abuse or
neglect, the duty not to adversely affect his learning, physical or mental
health or safety, and not to physically mistreat him under title 19, sections
61.1051, 247.2 and 242.15 of the administrative code.  See Tex.
Educ. Code Ann. '' 37.0021(d), 37.008(h) (Vernon
Supp. 2005); Tex. Fam. Code Ann. ' 261.001 (Vernon Supp. 2005); 19 Tex. Admin. Code Ann. '' 61.1051, 247.2, 242.15
(2005).  We note that, under the facts of
the case as set out in the Trevinos' pleadings, Oscar was not then a special
education student, a student being subjected to discipline, or a student at
risk of child abuse.  





[8] DeAnzona further observed
that "in order to overcome the qualified immunity of a supervisor, a
plaintiff must show that the defendant‑supervisor took deliberate action
in directing the constitutional violation, or had actual knowledge of the
violation and allowed the violation to continue."  DeAnzona v. City and County of Denver,
222 F.3d 1229, 1234 (10th Cir. 2000). 
The court stated that the "better approach" is "to
determine first whether the plaintiff has alleged a deprivation of a
constitutional right at all."  Id.  





[9] See Hart v. City of Little Rock,
432 F.3d 801, 805 (8th Cir. 2005) ("The Due Process Clause's guarantee
does not entail a body of constitutional law imposing liability whenever
someone cloaked with state authority causes harm[,] and does not transform
every tort committed by a state actor into a constitutional violation.")
(citations omitted); Pena v. Deprisco, 432 F.3d 98, 112 (2d Cir. 2005)
("The Fourteenth Amendment is not a 'font of tort law.'  It does not provide a comprehensive scheme
for determining the propriety of official conduct or render all official
misconduct actionable.") (citations omitted); Rivera v. Rhode Island,
402 F.3d 27, 37-38 (1st Cir. 2005) ("[M]erely rendering a person more
vulnerable to risk does not create a constitutional duty to protect . . . [and]
alleging state actions which render the individual more vulnerable to harm,
under a theory of state created danger, cannot be used as an end run around DeShaney's
core holding.") (citing DeShaney v. Winebago County Dept. of Social
Servs., 489 U.S. 189, 200 (1989)).  





[10] In response to School District
Employees' no-evidence motion for summary judgment, the Trevinos tendered
evidence to show the following:  (1) the
school approved and planned the field trip; (2) the principal was aware that
swimming, one of the available activities, could be dangerous and that a
drowning was a "possibility;" (3) the day before this trip, the
seventh graders took a similar trip and one student allegedly"nearly drowned;"
(4) school officials were advised and were therefore aware of the "near
drowning;" (5) the principal nevertheless determined that the eighth grade
field trip would go forward to the same facility the next day; (6) Oscar did
drown; (7) the principal opted not to secure lifeguards for the event or to
conduct a headcount at intervals during the day; (8) school officials did not
learn Oscar was missing until several hours after he died, and only after a
lengthy search was he found in the swimming pool; (9) the school district had
never conducted in-service training or special safety training for dealing with
swimming or other types of field trips; and (10) no additional safety
procedures were put in place in the wake of the "near-drowning" on
the preceding day.  





[11] We agree that in certain
instances, supervisors can be liable for "gross negligence" or
"deliberate indifference" to affirmative violations by their subordinates.  Taylor Indep. Sch. Dist., 15 F.3d at
452 (citing Hinshaw v. Doffer, 785 F.2d 1260, 1262 (5th Cir. 1986)
(establishing a three-part test for supervisory liability requiring a plaintiff
to show (a) failure to supervise, (b) a causal connection between the failure
to supervise or train and the plaintiff's rights, and (c) that the failure to
supervise or train amounted to gross negligence or deliberate
indifference)).  Nevertheless,
fundamental to this analysis is an initial affirmative violation of the
plaintiff's constitutional rights by a state actor.  Id. 


 

In City of Canton v. Harris,
489 U.S. 378, 388-89 (1989), the Supreme Court held that a municipality could
be responsible in certain circumstances under section 1983 for a failure to
train its employees that resulted in the violation of a plaintiff's right to
receive necessary medical attention while in police custody.  Id. at 381.  Again, however, the duty arose because of the
state's affirmative exercise of power over the individual's freedom (i.e., the
individual was in custody).  Id.  Extension of that duty beyond such
circumstances is rejected.  See Benavides
v. Santos, 883 F.2d 385, 387-88 (5th Cir. 1989) (finding it proper to
dismiss a complaint based on section 1983 allegations that jail supervisors
were callously indifferent or grossly negligent in failing to protect jailers
from injury when inmates attempted to escape). 


 

The affirmative duty to protect
prisoners . . . arises only because the state has, by an affirmative exercise
of power, so restrained the prisoner's liberty that he cannot care for himself;
prison guards and jailers, on the other hand, are simply employees who are
under no compulsion to submit to unsatisfactory working conditions and may quit
whenever they please.  

 

Leffall v. Dallas
Indep. Sch. Dist.,
28 F.3d 521, 528 (5th Cir. 1994) (citing Benavides, 883 F.2d at
388).  The due process clause "does
not guarantee . . . a workplace free from unreasonable risks of
harm."  Id. (quoting Collins
v. City of Harker Heights, 503 U.S. 115, 128 (1992) (rejecting claims that
the due process clause be interpreted to impose federal duties analogous to
those traditionally imposed by state tort law)). 





[12] We note that this is not a
situation where children were left to their own devices to enter the pool
completely unattended or unsupervised. 
Such conduct, in this context, might more closely equate to the
"deliberate indifference" contemplated by Farmer v. Brennan,
511 U.S. 825, 837 (1994).