**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SAM MELESSA, an individual,

Plaintiff - Appellee,

v.

JUDY RANDALL, individually and as
a Sheriff employed by the Washington
County Sheriff's Department,

Defendant - Appellant.

No. 03-4237
(D. Ct. No. 00-CV-451-B)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, and **HENRY**, Circuit Judges.

Plaintiff-Appellee Sam Melessa was incarcerated for 122 days after being arrested for witness tampering. Mr. Melessa brings a 42 U.S.C. § 1983 suit against Defendant-Appellant Judy Randall, a deputy with the Washington County, Utah Sheriff's Department, claiming that she omitted exculpatory information from the probable cause affidavit that led to his arrest. Arguing that she was entitled to qualified immunity, Deputy Randall moved for summary judgment.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

The District Court denied her motion, and Deputy Randall timely appeals. We first consider the extent to which we have jurisdiction over the denial of summary judgment, and with respect to the issues that may be decided on interlocutory appeal, we take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

On June 6, 1998, Deputy Randall received a phone call from her friend and relative, Nila Burnett. Mrs. Burnett called to report that her ex-husband, Mr. Melessa, had stalked her the previous night. During her investigation, Deputy Randall interviewed a local 17-year-old, Lorenzo McGregor III, whom Mrs. Burnett claimed was a witness to the alleged stalking. Mr. McGregor informed Deputy Randall that he had seen Mr. Melessa in the bushes outside of the auto body shop owned by Mrs. Burnett's current husband, Robert Burnett. Mr. McGregor provided Deputy Randall with a written statement to this effect.

Deputy Randall also interviewed Mr. Melessa twice during the stalking investigation. During one such interview, Deputy Randall asked Mr. Melessa if he had a firearm in his truck, which was parked at another location. He said he did. Not wanting Mr. Melessa to possess a loaded firearm, Deputy Randall seized the firearm and gave him a written receipt for it. Later that day, Deputy Randall served Mr. Melessa with a misdemeanor firearm citation for carrying a loaded gun in a vehicle.

Upon completing her stalking investigation, Deputy Randall submitted an investigative report to the Washington County Attorney's Office recommending charges against Mr. Melessa for "terroristic threats" and "stalking." On June 10, however, the county attorney's office chose not to prosecute Mr. Melessa because in its view there was "no proof of stalking."

Although the firearm citation should have been submitted to the Justice Court within five days of issuance, the court did not receive it until July 28—almost two months later. On June 15, Mr. Melessa appeared in the Justice Court to contest the firearm citation. The court's clerk informed him that the court had no record of any charges pending against him. Mr. Melessa returned on July 2 to contest the citation, and the clerk again found no charges.

Having twice been told that no firearm charges were pending, Mr. Melessa attempted to retrieve his gun. Mr. Melessa spoke with attorney Ryan Shaum at the county attorney's office who confirmed that there were no charges pending against him. Mr. Shaum provided Mr. Melessa with a letter addressed to the evidence custodian to assist him in retrieving his firearm. The letter stated that "this office did not file criminal charges relating to Mr. Melessa's actions on the 6th and 7th days of June, 1998, and the County Attorney's Office does not require that any evidence be held relating to this incident." Mr. Melessa, however, was unable to retrieve his firearm. He claims that Deputy Randall read the letter,

knew Mr. Shaum was unaware of the firearm citation, and thus instructed the evidence custodian not to release the gun.

In July 1999, more than a year after these events, Mr. Melessa saw Mr. McGregor, the witness to the alleged stalking, at a local rodeo. Mr. Melessa accused Mr. McGregor of making false statements to the police and informed him that if he were to make those statements under oath he would be sued for perjury. Mr. Melessa claims that he approached Mr. McGregor because he believed that Deputy Randall engaged in misconduct by coercing Mr. McGregor into making false statements. Upon learning of this conversation, however, Deputy Randall considered Mr. Melessa to have tampered with a witness.

Deputy Randall prepared an investigative report for this alleged witness tampering. Based on this report, Mr. Shaum drafted a probable cause affidavit in support of an arrest warrant. Deputy Randall reviewed the affidavit and signed it on October 22, 1999. Mr. Melessa was then arrested on the tampering charge. During this arrest, Mr. Melessa threatened the local judge. Mr. Melessa was then held on both witness tampering and obstruction of justice charges, which increased the amount at which his bail was set. Consequently, Mr. Melessa was unable to post bail and remained incarcerated for 122 days prior to a preliminary hearing that led to his release.

Mr. Melessa brought suit against numerous defendants under 42 U.S.C.

§ 1983, alleging that his incarceration resulted from a violation of his constitutional rights. The complaint was dismissed with respect to all defendants except Deputy Randall whom Mr. Melessa claimed violated his Fourth and Fourteenth Amendment rights by knowingly or recklessly omitting information that would have vitiated probable cause from the arrest affidavit. Claiming qualified immunity, Deputy Randall moved for summary judgment. The District Court denied her motion, and she now timely appeals.

## II. JURISDICTION

Our jurisdiction is generally limited to final decisions. 28 U.S.C. § 1291. Although a denial of summary judgment is not considered a final decision, the Supreme Court has held "that a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). We therefore have jurisdiction to hear a limited range of issues with respect to denials of summary judgment involving qualified immunity. *Mick v. Brewer*, 76 F.3d 1127, 1133 (10th Cir. 1996).

More specifically, we may exercise jurisdiction to review denials of summary judgment based on qualified immunity when we are "present[ed with] neat abstract issues of law." *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th

Cir.1997) (quoting *Johnson v. Jones*, 515 U.S. 304, 317 (1995)). Issues of law include "what the current applicable law is, whether that law was clearly established at the time the official's action occurred, and whether the official's acts were objectively reasonable." *Campbell v. Mercer*, 926 F.2d 990, 991 (10th Cir. 1991).

We do not have jurisdiction to review a denial of summary judgment based on qualified immunity if the claim on appeal is based on disputed facts. *See Johnson v. Jones*, 515 U.S. 304, 307 (1995). Therefore, we may properly exercise jurisdiction only "[i]f the defendant argues that she is entitled to qualified immunity under the plaintiff's version of the facts because the plaintiff has not demonstrated a violation of clearly established law." *DeAnzona v. City & County of Denver*, 222 F.3d 1229, 1233-34 (10th Cir. 2000).

Deputy Randall raises numerous issues on appeal. We conclude, however, that only two present "neat abstract issues of law" over which we have jurisdiction.[1] Hence, we take jurisdiction for the limited purpose of considering

[1]For example, Deputy Randall argues that she is entitled to summary judgment because there is no evidence that she knowingly or recklessly, rather than negligently, omitted any information from the affidavit. This argument contests the sufficiency of the evidence on which the District Court found a genuine issue of material fact to exist. This issue cannot be raised on interlocutory appeal. *See Johnson*, 515 U.S. at 307. Deputy Randall further argues that summary judgment should have been granted because any omission by her was not the proximate cause of Mr. Melessa's 122-day-long imprisonment and

(continued...)

- 6 -

whether the information omitted from the affidavit was material and whether Deputy Randall should be granted qualified immunity because she relied on the advice of counsel in drafting the affidavit.

### III. DISCUSSION

#### A.    Standard of Review

We review the district court's denial of qualified immunity de novo. *Bisbee v. Bey*, 39 F.3d 1096, 1099-1100 (10th Cir. 1994). Police officers are entitled to qualified immunity, *England v. Hendricks*, 880 F.2d 281, 283 (10th Cir. 1989), which shields them from civil liability under certain circumstances. Specifically, a police officer will not be held liable "'insofar as [her] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When an officer raises the defense of qualified immunity, we apply a two-part test to determine whether the plaintiff has defeated it: "First, the plaintiff must show [under his version of the facts] the defendant's conduct violated a constitutional or statutory right; and second, the plaintiff must show the

<hr>

[1](...continued)

because Mr. Melessa eventually admitted to witness tampering. We also do not have jurisdiction to hear these claims because the denial of a motion for summary judgment, unrelated to qualified immunity, is not an appealable decision under 28 U.S.C. § 1291. *See Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir. 1994).

right the defendant's conduct violated was clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right." *Id.* If the plaintiff makes these showings, the officer is not immune from suit.

B.  Whether Omissions Were Material

Deputy Randall does not dispute that it is clearly established law that knowingly or recklessly omitting material information from an arrest affidavit violates the arrestee's Fourth and Fourteenth Amendment rights. *See Stewart v. Donges*, 915 F.2d 572, 582-83 (10th Cir. 1990). Deputy Randall only argues that the omitted information was not material. To determine whether an omission is material, and thus violates the arrestee's constitutional rights, we consider whether probable cause would exist if the information was included in the affidavit. *Id.* at 582 n.13. Deputy Randall contends that because the omitted information's inclusion in the affidavit would not have vitiated probable cause, she did not violate Mr. Melessa's constitutional rights. We disagree.

Under Utah law, a person is guilty of witness tampering "if, believing that an official proceeding or investigation is pending or about to be instituted, or with the intent to prevent an official proceeding or investigation, he attempts to induce or otherwise cause another person to (a) testify or inform falsely; [or] (b) withhold any testimony, information, document, or item." Utah Code Ann. § 76-

8-508(1). Therefore, the offender must subjectively believe that an official proceeding or investigation is currently pending or will be initiated in the future, and he must induce false or incomplete testimony from a witness who may be called to testify or provide evidence concerning that proceeding or investigation.

The arrest affidavit stated that Mr. Melessa had attempted to persuade Mr. McGregor to change his statement concerning the events he witnessed in connection with the alleged stalking of Mr. Melessa's ex-wife. It also states that "[a]t the time of the incidents giving rise to the witness-tampering charge, the defendant had an outstanding bench warrant issued by the Justice Court relating to his June 1998 activities." The affidavit, however, fails to note that the outstanding bench warrant was for the firearm citation, not for the stalking incident, and that Mr. McGregor was not a witness to the firearms violation. The affidavit also omits the fact that Mr. Melessa was given a letter from the Washington County Attorney's Office, which stated that it "did not file criminal charges relating to Mr. Melessa's actions on the 6th and 7th days of June, 1998." Had the affidavit clearly specified that the bench warrant related to a firearm charge to which Mr. McGregor was not a witness, this statement would be insufficient to create probable cause. These omissions, therefore, are sufficient to vitiate probable cause for witness tampering.

Moreover, had the arrest affidavit included the letter from the county

attorney's office, the claim that Mr. Melessa believed an official proceeding or investigation was pending or about to be instituted regarding the alleged stalking would be seriously undermined. The letter clearly states that no charges were pending against Mr. Melessa and it refers to the entire sequence of events surrounding the alleged stalking as merely an "incident" rather than an "investigation." We therefore conclude that had the letter been included in the affidavit, there would have been no probable cause to arrest Mr. Melessa for witness tampering because there would be no basis to conclude that Mr. Melessa believed an investigation or charge were pending or about to be instituted concerning the allegations of stalking.

Even if we assume that Mr. Melessa was aware of the *firearm* charge pending against him, however, there would not be probable cause to arrest him for witness tampering because the alleged tampering did not concern this charge. Again, Deputy Randall omitted the fact that Mr. McGregor was not a witness to any event concerning the firearm charge and Mr. Melessa did not approach him about changing his statement about anything related to this charge. Thus, had this information been included in the affidavit, there would have been no probable cause to arrest Mr. Melessa for witness tampering involving the firearm charge because Mr. McGregor was not a witness to the incident.

Deputy Randall counters that the fact that the crime under investigation is

different from the crime for which the alleged witness tampering occurred is insufficient to vitiate probable cause. In other words, Deputy Randall argues that witness tampering can occur when a person seeks to influence statements that are wholly unrelated to any investigation of, or charges pending against, that person.

We conclude that Utah's witness tampering statute cannot support Deputy Randall's interpretation. As we noted above, a person is guilty of witness tampering if he subjectively believes that an official proceeding or investigation is currently pending or will be initiated in the future, and he must induce false or incomplete testimony from a witness who may be called to testify or provide evidence concerning *that particular* proceeding or investigation. *See* Utah Code Ann. § 76-8-508(1). Our interpretation is consistent with the application of this statute by the Utah Supreme Court, which has only considered witness tampering in the context of a witness with information relevant to the investigation. *See State v. Bradley*, 752 P.2d 874, 877 (Utah 1985) (affirming a witness tampering conviction where the defendant attempted to prevent a witness to a theft from involving herself with ongoing investigation concerning that theft). As such, we reject Deputy Randall's argument that the omitted information would not vitiate probable cause because Mr. McGregor was a witness to the stalking and a bench warrant existed for the firearm charge. Because the omitted information was material, Deputy Randall is not entitled to qualified immunity on this basis.

C.    Reliance on Counsel

This Court has recognized that "extraordinary circumstances" can exist such that an officer is entitled to qualified immunity despite the fact that her actions violated clearly established law. *See V-1 Oil Co. v. Wyoming*, 902 F.2d 1482, 1488-89 (10th Cir. 1990). Deputy Randall argues that even if she knowingly or recklessly omitted material information from the arrest affidavit, she is still entitled to qualified immunity because the decision to omit the information was made by Mr. Shaum when he drafted the affidavit and she was therefore relying on the advice of counsel when she signed the affidavit. She argues that her reliance on counsel constitutes an extraordinary circumstance and thus warrants qualified immunity.

Although Deputy Randall is correct that "reliance on the advice of counsel in certain circumstances rises to the level of extraordinary circumstances," *id.*, she fails to show that Mr. Shaum ever gave her legal advice. Mr. Shaum simply prepared the affidavit based on Deputy Randall's own investigative report. Deputy Randall does not allege that Mr. Shaum advised her as to what information to include in the report; nor does she allege any facts from which we could construe Mr. Shaum's actions as constituting legal advice. Therefore, the "extraordinary circumstances" exception based upon the advice of counsel is simply inapplicable to this case.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the District Court's denial of summary judgment based on qualified immunity.


ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge