FILED
United States Court of Appeals
Tenth Circuit

**December 9, 2009**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHNNY L. BASS,

      Plaintiff-Appellee,

v.

JERRY GOODWILL,

      Defendant-Appellant.

No. 08-6168
(D.C. No. 5:06-CV-00397-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, and **SEYMOUR** and **EBEL**, Circuit Judges.[**]

      Jerry Goodwill, the detention officer at the Pottawatomie County Public

Safety Center ("the jail") appeals the district court's interlocutory order denying

his motion for summary judgment regarding the 42 U.S.C. § 1983 due

process/conditions of confinement claim brought by the plaintiff Jerry L. Bass.

Mr. Bass alleged that while he was detained at the jail, Officer Goodwill placed

---

      [*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

      [**]After examining the briefs and the appellate record, this three-judge panel
has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

him in a cell with a violent inmate who proceeded to assault him. The district court rejected Officer Goodwill's argument that he was entitled to qualified immunity.

Officer Goodwill now argues that (1) the evidence is insufficient to support Mr. Bass's due process claim; (2) the district court committed legal error by (a) conflating the objective and subjective prongs of the due process/conditions of confinement claim; and (b) rejecting his contention that he is entitled to qualified immunity because he relied on an official jail policy in placing Mr. Bass in the cell with the inmate who committed the assault. We lack jurisdiction to consider the first argument, and we are not persuaded by Officer Goodwill's other contentions. We therefore dismiss in part, affirm in part, and remand the case to the district court for further proceedings consistent with our decision.

## I. BACKGROUND

Because Officer Goodwill is appealing the denial of his motion for summary judgment, we view the record in the light most favorable to the non-moving party—here Mr. Bass. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 893 (10th Cir. 2009).

### A. The Assault at the Jail

On the night of June 5, 2003, police in Pottawatomie County, Oklahoma, arrested Mr. Bass on suspicion of drunk driving and took him to the jail. That

same night, police arrested two brothers, Jason and Solomon Grass. While Mr. Bass waited in the booking area for classification, Officer Goodwill observed a verbal confrontation in the lobby between the Grass brothers that possibly involved Mr. Bass. Officer Goodwill placed Solomon Grass in the "H pod," a one-man cell, and Jason Grass in the "G pod" or drunk pod, a cell generally reserved for intoxicated individuals, while the Grass brothers awaited their turn for booking. There is no evidence that Jason Grass was intoxicated.

In an attempt to relieve the booking area from overcrowding, Officer Goodwill also placed Mr. Bass into the G pod with Jason Grass and several other inmates. Within minutes, Jason Grass severely beat Mr. Bass. Officer Goodwill received a call that Mr. Bass was injured in the drunk pod and requested medical assistance. Mr. Bass was then transported to a local hospital.

According to Officer Goodwill, Solomon and Jason Grass were arguing and had to be separated. Officer Goodwill placed Solomon Grass in the single-man H pod (because he was the aggressor) and Jason Grass in the G pod (to await his turn for booking). Officer Goodwill maintains that, at the time he placed Mr. Bass in the G pod with Jason Grass, he had no concerns that Mr. Bass was going to be attacked.

Mr. Bass has almost no personal knowledge of the event, in part due to his intoxication and in part due to his significant injuries. Mr. Bass, nonetheless, contends that Officer Goodwill knew that Jason Grass was dangerous because he

- 3 -

was initially arrested for creating a disturbance with his brother. Mr. Bass also cites media reports that he had had a verbal dispute with the Grass brothers before he was placed in the drunk pod with Jason Grass. In particular, Rod Bottoms, the director of the jail, originally reported to the media that Mr. Bass was involved in the Grass brothers' altercation. In subsequent deposition testimony, Mr. Bottoms stated that further investigation revealed that the dispute involved only the Grass brothers.

Mr. Bass also offered a report prepared by Thomas Rosazza, an expert in correctional management and custodial care. Mr. Rosazza summarized the evidence and concluded that "it is my opinion that [jail] officials failed to provide a safe environment for Mr. Bass by failing to place him in a cell where he was safe from predatory arrestees such as Mr. Grass." Aplt's App. at 277. Mr. Rosazza added, "It is also my opinion that [jail] officials failed to provide a safe environment for Mr. Bass by not posting officers in or immediately adjacent to the booking area so that they could hear or see and respond immediately to the assault on Mr. Bass." *Id.*

**B. The District Court Proceedings**

Mr. Bass filed this 42 U.S.C. § 1983 action against the jail, Officer Goodwill, and several other defendants. Relevant to this appeal, Mr. Bass alleged that Officer Goodwill subjected him to cruel and unusual punishment, thereby violating his due process rights as a pretrial detainee. In response,

- 4 -

Officer Goodwill filed a motion for summary judgment asserting the defense of qualified immunity.

In denying Officer Goodwill's motion, the district court observed that the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from unconstitutional conditions of confinement to the same extent that the Eighth Amendment protects convicted criminals. Aplt's App. at 462 (Order, filed July 31, 2008) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979)). Unconstitutional conditions of confinement may include "violence at the hands of other prisoners" if prison officials are deliberately indifferent to substantial risks of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (alteration omitted).

To establish a violation of his due process rights based on the conditions of confinement at the jail, Mr. Bass was required to establish both (1) that he faced "a substantial risk of serious harm" (an objective inquiry), and (2) that Officer Goodwill had "a sufficiently culpable state of mind"—"one of deliberate indifference" to his health or safety (a subjective inquiry). *Id.* at 834 (internal quotation marks and citations omitted). Before liability can be imposed, "a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (quoting *Farmer*, 511 U.S. at 837).

The district court found that Mr. Bass faced a substantially serious risk, satisfying the objective component of the inquiry. The parties hotly disputed the subjective component. Reviewing the evidence, the district court determined that there were genuine issues of material fact as to whether Officer Goodwill had a "sufficiently culpable state of mind." Aplt's App. at 464. The court explained that "it is disputed whether defendant Goodw[i]ll heard Jason Grass make a menacing statement toward plaintiff before placing the two together in the drunk pod. In this regard, the Court finds that plaintiff has presented sufficient evidence to demonstrate that defendant Goodw[i]ll appeared to be deliberately indifferent to the substantial risk of serious harm." *Id.* Thus, Officer Goodwill was not entitled to qualified immunity on Mr. Bass's due process/conditions of confinement claim.

## II. DISCUSSION

Officer Goodwill now appeals the district court's ruling that he is not entitled to qualified immunity. He argues that (1) Mr. Bass failed to present sufficient evidence to support his due process/conditions of confinement claim; and (2) the district court incorrectly applied the law regarding Mr. Bass's claim by (a) citing evidence related to the subjective prong in its discussion of the objective prong and (b) rejecting Officer Goodwill's contention that he is entitled

- 6 -

to qualified immunity because he relied on an official jail policy in placing Mr. Bass in the G pod with Jason Grass.

## A. Jurisdiction

We have only limited jurisdiction to review district court decisions denying summary judgment on qualified immunity grounds. In particular, we may review those decisions only if they are based on issues of law, "such as whether the law was clearly established at the time of the alleged infraction." *Fogarty v. Gallegos*, 523 F.3d 1147, 1153 (10th Cir. 2008); *see generally Johnson v. Jones*, 515 U.S. 304, 313 (1995) (discussing the limited appellate jurisdiction to review the denial of qualified immunity). Additionally, "[i]f the defendant argues that [he] is entitled to qualified immunity under the plaintiff's version of the facts because the plaintiff has not demonstrated a violation of clearly established law, this Court may properly exercise jurisdiction over an interlocutory appeal." *DeAnzona v. City and County of Denver*, 222 F.3d 1229, 1233 (10th Cir. 2000).

In contrast, "[a] defendant may not immediately appeal a district court's order denying qualified immunity . . . merely to dispute the district court's conclusions that plaintiff's claims are supported by sufficient evidence in the record or that disputed issues of material fact exist which preclude summary judgment." *Walker v. City of Orem,* 451 F.3d 1139, 1154 (10th Cir. 2006). We "scrupulously avoid second-guessing the district court's determinations regarding

whether [plaintiff] has presented evidence sufficient to survive summary judgment." *Garrett v. Stratman*, 254 F.3d 946, 952 (10th Cir. 2001) (quotation omitted). "Those facts explicitly found by the district court, combined with those that it likely assumed, . . . form the universe of facts upon which we base our legal review of whether defendants are entitled to qualified immunity." *Fogarty*, 523 F.3d at 1154.

Nevertheless, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Accordingly, even in an appeal of the denial of qualified immunity, we need not accept the district court's factual determinations to the extent that they are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Id.*; *see also Blossom v. Yarbrough*, 429 F.3d 963, 967 (10th Cir. 2005) (raising the possibility that a complete lack of evidence supporting the plaintiff's claim might involve "a jurisdictionally permissible abstract question of law that may be resolved in a qualified immunity appeal" but concluding that the issue need not be decided).

**B. Standard of Review**

When the district court denies a motion for summary judgment in which a defendant asserts the defense of qualified immunity, this court reviews its legal

determinations de novo. *Poolaw v. Marcantel*, 565 F.3d 721, 728 (10th Cir. 2009). Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

However, "[b]ecause of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1108 (10th Cir. 2008). "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (internal quotation marks omitted).

Thus, in order to defeat a summary judgment motion raising the qualified immunity defense, a plaintiff "must satisfy a 'heavy' two-part burden, establishing that (1) the defendant violated a constitutional or statutory right, and (2) the right was clearly established at the time of the defendant's unlawful conduct." *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007). Moreover, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from

other courts must have found the law to be as the plaintiff maintains." *Cortez v. McCauley*, 478 F.3d 1108, 1114-15 (10th Cir. 2007) (en banc) (internal quotation marks omitted). Officials may be on notice that their conduct violates established law even in novel factual circumstances. *Id.*

**C. This court lacks jurisdiction to consider Officer Goodwill's challenges to the sufficiency of the evidence.**

In his appellate brief, Officer Goodwill first contends that Mr. Bass "cannot establish a constitutional violation." *See* Aplt's Br. at 10-19. The majority of Officer Goodwill's argument challenges the district court's assessment of the evidence. Thus, he argues that: "the evidence upon which the court purportedly relied in reaching its decision does not support its ruling," Aplt's Br. at 8; Mr. Bass "failed to present any evidence that Goodwill had any actual awareness of a substantial risk of harm," *id.* at 12; "a review of the expert report upon which the district court relied reveals that it does not in any way support the district court's findings," *id.* at 13; "there was no evidence presented indicating that there was a menacing statement between [Jason] Grass and [Mr. Bass]," *id.* at 13; "[n]either of these statements [of fellow prisoners] support [Mr. Bass's] claims," *id.* at 16; and "[t]he record is clear that Goodwill had no notice of an impending assault," *id.* at 17. Under Supreme Court and Tenth Circuit precedent, we lack jurisdiction to consider Officer Goodwill's arguments on this issue.

Officer Goodwill acknowledges the limitation on our jurisdiction over district court decisions denying qualified immunity—that we cannot review "the district court's conclusions that plaintiff's claims are supported by sufficient evidence in the record or that disputed issues of material fact exist which preclude summary judgment." *Walker*, 451 F.3d at 1154. Nevertheless, he maintains, we may consider his arguments because Mr. Bass's claim is supported by no evidence whatsoever. *See* Aplt's Reply Br. at 3-4 (discussing *Blossom*, 429 F.3d at 967).

We are not persuaded. The district court's finding that "[Mr. Bass] has presented sufficient evidence to demonstrate that defendant [Officer Goodwill] appeared to be deliberately indifferent to the substantial risk of serious harm," Aplt's App. at 464, is supported by evidence submitted by Mr. Bass in support of his allegations, including (a) Mr. Bottoms's initial statements to the media that there was an altercation between Mr. Bass and the Grass brothers before Mr. Bass was placed in the G pod; (b) statements by other inmates that Jason Grass began beating on the door and yelling when he was placed in the G pod; and (c) the report of Mr. Rosazza, the expert in correctional management and custodial care, who concluded that "[jail] officials failed to provide a safe environment for Mr. Bass by failing to place him in a cell where he was safe from predatory arrestees such as Mr. Grass." Aplt's App. at 277. Despite Officer Goodwill's arguments to the contrary, we cannot say that this evidence is "blatantly

- 11 -

contradicted by the record, so that no reasonable jury could believe [it]." *Scott*, 550 U.S. at 380. Because this court cannot reweigh the evidence in the manner Officer Goodwill now urges, we lack jurisdiction to consider his challenges to the sufficiency of the evidence.

**D. The district court applied the correct legal standards in addressing Mr. Bass's conditions-of-confinement claim**.

Apart from his attacks on the district court's factual conclusions, Officer Goodwill argues that the district court incorrectly applied the controlling legal standards governing his due process/conditions of confinement claim. These arguments involve legal questions, and we therefore have jurisdiction to consider them. *See Fogarty*, 523 F.3d at 1153. We hold that the district court correctly applied the law.

**1. The court's statements regarding the objective and subjective components of Mr. Bass's claim are not grounds for reversal**.

Officer Goodwill argues that "in determining [Mr. Bass] has met the objective component of his claim, the court referenced alleged evidence related to whether Goodwill had actual knowledge of substantial risk." Aplt's Br. at 18. Officer Goodwill cites the district court's statement that

> plaintiff has presented a preliminary expert report which sufficiently illustrates a genuine issue of material fact concerning whether defendant Goodwill properly monitored prisoners under his charge, *had knowledge of Jason Grass's pending and past charges and Jason Grass's purportedly violent behavior.* Furthermore, because plaintiff was allegedly intoxicated, the Court

finds sufficient evidence that he may have been impaired [in] his ability to defend himself when placed in the drunk pod with Jason Grass. *Therefore, plaintiff has met the objective component of the deliberate indifference test.*

Aplt's App. at 463 (emphasis added).

As we have noted, Mr. Bass's claim has (1) an objective component (that he faced "a substantial risk of serious harm," *Farmer*, 511 U.S. at 834); and (2) a subjective component (that the government official had a sufficiently culpable state of mind). Here, even though it refers to the "objective component," some of the court's discussion does seem to address the evidence pertaining to the subjective component of Mr. Bass's claim (*e.g.*, the evidence regarding Officer Goodwill's alleged knowledge of Jason Grass's violent behavior).

But Officer Goodwill does not now dispute the objective component of Mr. Bass's claim. Instead, he challenges the evidence regarding the subjective component of that claim. *See* Aplt's Br. at 12 (arguing that Mr. Bass "failed to present any evidence that Goodwill had any *actual awareness* of a substantial risk of harm") (emphasis added). Accordingly, we discern no reversible error in the district court's discussion of evidence related to the subjective component in concluding that Mr. Bass "has met the objective component of the deliberate indifference test." *Id.*

**2. Officer Goodwill's alleged reliance on official policy does not entitle him to qualified immunity.**

As we have noted, the doctrine of qualified immunity "shields government officials performing discretionary functions from liability for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Boles*, 486 F.3d at 1180 (internal quotation marks omitted).  Thus, absent exceptional circumstances, a defendant will not ordinarily be entitled to summary judgment on qualified immunity grounds if the plaintiff establishes that (1) the defendant violated a constitutional or statutory right and (2) the right was clearly established at the time of the defendant's unlawful conduct.  *Mecham,* 500 F.3d at 1204.

Nevertheless, in certain instances, qualified immunity may be warranted even if a defendant violates a clearly established constitutional right.  *See Roska v. Peterson*, 328 F.3d 1230, 1251-52 (10th Cir. 2003) (observing that when a right is clearly established, "a defendant should only rarely be able to succeed with a qualified immunity defense") (internal quotation marks omitted).  "The circumstances must be such that the defendant was so prevented from knowing that his actions were unconstitutional that he should not be imputed with knowledge of a clearly established right."  *Id.* (internal quotation marks omitted).

For example, an officer's "reliance on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question *may* absolve the officer

- 14 -

from knowing that his conduct was unlawful." *Kay v. Bemis*, 500 F.3d 1214, 1221 n.6 (10th Cir. 2007) (emphasis added) (internal quotation marks omitted). However, an officer's reliance on those authorities is only "a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Roska*, 328 F.3d at 1252. An authorizing statute, regulation, or policy does not render the officer's conduct reasonable per se. *Id.*

Here, Officer Goodwill argues that his actions were reasonable because he relied upon the jail's unwritten policy directing officials to place intoxicated inmates with non-intoxicated inmates when the intake area became too crowded "unless the detention officer felt it could not be safely accomplished." Aplt's Br. at 5 (citing Aplt's App. at 66-67). The only evidence he offers as to this policy is his own deposition. There, he stated that the jail's practice was to place intoxicated and non-intoxicated inmates together. *See* Aplt's App. at 67. In effect, he now maintains that the policy "prevented [him] from knowing that his actions were unconstitutional." *Roska*, 328 F.3d at 1252 (internal quotation marks omitted).

The decisions cited by Officer Goodwill do not suggest that a defendant may be entitled to qualified immunity based only upon his own testimony about the terms of an alleged official policy. *See Kay*, 500 F.3d at 1221 n.6 (discussing "prison regulations" but providing no indication that the terms of such regulations could be established merely by an officer's testimony); *Lawrence v.*

*Reed*, 406 F.3d 1224, 1231 (10th Cir. 2005) (stating that "reliance on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question may absolve the officer from knowing that his conduct was unlawful") (internal quotation marks and alteration omitted); *Roska*, 328 F.3d at 1252-53 (discussing reliance on a state statute). Because the qualified immunity inquiry is an objective one, *see Poolaw*, 565 F.3d at 735, we doubt that a defendant's own testimony, standing alone, could be sufficient to establish qualified immunity in these circumstances.

In any event, the official policy that Officer Goodwill describes does not explicitly authorize his alleged conduct. According to Officer Goodwill, jail policy allowed placement of intoxicated inmates with non-intoxicated ones when it could be accomplished in a safe manner. Aplt's Br. at 5 (citing Aplt's App. at 66-67). The district court found evidence to support Mr. Bass's contention that Officer Goodwill was deliberately indifferent to the fact that it was *unsafe* to place Mr. Bass and Jason Grass together. Therefore, the unwritten policy, by Officer Goodwill's own formulation, did not authorize his conduct, and he is not entitled to qualified immunity because he relied upon it.[1]

---

[1] We also note that the alleged unwritten policy appears inconsistent with the Oklahoma State Department of Health Standards regarding segregation of prisoners. Okla. Admin. Code § 310:670-5-5(5) ("Prisoners who are intoxicated or under the influence of a controlled substance shall be housed separately from other prisoners until such time as the medical authority or the jail administrator
(continued...)

- 16 -

# III. CONCLUSION

For the reasons set forth above, we lack jurisdiction to consider Officer Goodwill's challenges to the sufficiency of the evidence. As to Officer Goodwill's other arguments, we conclude that the district court properly applied the applicable law.

We therefore DISMISS in part, AFFIRM in part, and REMAND the case for proceedings consistent with this opinion.[2]

Entered for the Court,

Robert Henry
Chief Judge

---

[1](...continued)
determines their suitability for placement into general population or other appropriate housing.").

[2] Mr. Bass also asks us to "award attorney fees and costs, and for any and all further relief to which he may be entitled." Aple's Br. at 37. Because Mr. Bass has only prevailed on this interlocutory appeal, he is not yet a "prevailing party" entitled to attorneys fees under the statute. *See Hewitt v. Helms*, 482 U.S. 755, 760 (1987) (holding that "a plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail [under 42 U.S.C. § 1988]"), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *Palmer v. City of Monticello*, 31 F.3d 1499, 1508 (10th Cir. 1994) (explaining that "[p]laintiffs who prevail *at trial* in § 1983 suits and successfully defend those *judgments* on appeal are entitled to recover attorneys' fees . . . . ") (emphasis added). Should Mr. Bass prevail at trial, he may seek attorneys' fees at that point.

With respect to costs, Mr. Bass may file with the Clerk of this court a bill of costs, subject to Officer Goodwill's objections. *See* Fed. R. App. P. 39.