880 F.Supp. 37 (1995)
STATE OF NEW YORK, Plaintiff,
v.
UNITED STATES of America, Defendant.
Civ. A. No. 94-2219 (JLB USCA, RCL, PLF).
United States District Court, District of Columbia.
March 16, 1995.
*38 G. Oliver Koppell, Atty. Gen. of the State of N.Y., Harvey J. Golubock, Joel Graber, Mark G. Peters, New York City, for plaintiff.
John K. Tanner, Richard B. Jerome, Colleen M. Kane, T. Christian Herren, Voting Section, Civil Rights Div., Dept. of Justice, Washington, DC, for defendant.
Before BUCKLEY, Circuit Judge, D.C. Circuit LAMBERTH, Judge U.S. District Court FRIEDMAN, Judge U.S. District Court.

MEMORANDUM OPINION AND ORDER
PER CURIAM.
On December 22, 1994, this Court granted plaintiff's motion for summary judgment and issued an order declaring that the legislation creating certain additional judgeships in New York State did not have the purpose and would not have the effect of denying or abridging the right of racial minorities to vote. Defendant United States now moves this Court to reverse its grant of summary judgment and allow defendant to take additional discovery in this case.[1] Because defendant's motion to reconsider fails to identify either new evidence or a clear error of law, the motion is denied.

Facts
As set forth more fully in this Court's December 22, 1994, Memorandum Opinion, defendant maintains that the system for electing trial court judges in the State of New York discriminates against minority voters. In the fall of 1993, pursuant to section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c, plaintiff requested preclearance from the Attorney General of the United States for the creation of 14 additional trial court judgeships in Bronx and Kings Counties. After more than a year of informal discovery, the Attorney General denied this request.
Plaintiff then sought a declaratory judgment from this Court that the legislation creating these new judgeships did not have the purpose and would not have the effect of denying or abridging the right of racial minorities to vote. On New York's motion for summary judgment, this Court found that the State of New York had carried its statutory burden of establishing that the decision to create the new judgeships was free from invidious intent and effect. We rejected defendant's contention that it had raised an issue of material fact on the question of invidious intent. Furthermore, at the summary judgment hearing, defense counsel was unable to identify any evidence which defendant had found (or would be likely to find) revealing an invidious motive on the part of the legislators who voted to create the new judgeships. Accordingly, defendant's request that it be given an additional opportunity to conduct discovery was denied.

Analysis
A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled. Such a motion "`must address new evidence or errors of law or fact and cannot merely reargue previous factual and legal assertions.'" Assassination Archives and Research Center v. United States Dept. of Justice, 828 F.Supp. 100, 102 (D.D.C.1993) *39 (quoting Mississippi Ass'n of Coops. v. Farmers' Home Admin., 139 F.R.D. 542, 546 (D.D.C.1991)). Only if the moving party presents new facts or a clear error of law which "compel" a change in the court's ruling will the motion to reconsider be granted. Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency, 705 F.Supp. 698, 702 (D.D.C.1989); see also National Trust for Historic Preservation v. Department of State, 834 F.Supp. 453, 455 (D.C.C.1993), aff'd in part, rev'd in part sub nom. Sheridan Kalorama Historical Ass'n v. Christopher, 49 F.3d 750 (D.C.Cir. 1995). After consideration of the filings of counsel, we conclude that defendant's motion for reconsideration is essentially a rehash of the arguments presented to and previously rejected by this Court.
Defendant states that "the purpose of this Motion to Reconsider is to identify for the Court facts in the record that do lead to an inference of racial purpose under the standards established by the Supreme Court." Def.'s Mem. Supp. M. Recon. at 2. These facts (which, by defendant's admission, were "in the record" at the summary judgment phase) have already been considered by the Court. As our December 22, 1994, Memorandum Opinion makes clear, we considered and rejected defendant's theory that these facts established the existence of an electoral system so discriminatory that the Court could simply infer a discriminatory purpose behind any legislation which sought to extend or perpetuate the system. See Mem. Op. at 11 (noting that "while a state's decision to add new judgeships to ... a blatantly discriminatory system might well create a sufficient inference of invidious purpose so as to preclude a grant of preclearance under section 5, defendant's allegations ... fall far short of portraying" such a system).
It is obvious that defendant does not agree with the Court's earlier ruling; as set forth above, however, a motion to reconsider must establish more than simply the defendant's continued belief that the court's decision was erroneous. This Court specifically rejected defendant's theory that New York's preclearance request for the new judgeships under section 5 of the Voting Rights Act requires an analysis of the existing electoral system in order to determine whether that system is itself discriminatory. Mem. Op. at 13. Section 2 of the Voting Rights Act, 42 U.S.C. § 1973(a), provides a procedure for challenging the validity of an existing voting scheme, and, as noted in our earlier opinion, a section 2 suit is currently pending in the Southern District of New York. Mem. Op. at 9 n. 5.
As for the matter of discovery, when questioned at oral argument about what further discovery would be necessary should the Court determine that the validity of the existing electoral system was not relevant to the Court's resolution of the section 5 preclearance issue, defense counsel consistently was unable to identify what facts or information might be found that would establish the existence of an invidious intent in creating the new judgeships. In fact, at one point during oral argument, Judge Buckley stated to defense counsel: "If we don't accept your theory [that the validity of the underlying scheme is relevant in a section 5 proceeding], there's no need for discovery is what you're saying." Defense counsel responded, "I think that's right." Transcript at 28-29.
Defendant's memorandum in support of its motion to reconsider also fails to set forth adequate grounds to persuade the Court that further discovery is warranted in this case. Defendant concedes that the legislation creating the new judges in New York will not have a retrogressive effect. In addition, we have concluded that the validity, under section 2, of an existing electoral system is not an issue in a section 5 proceeding. Mem. Op. at 13. Thus, the only avenue open to the defendant is our observation that a system might be so blatantly discriminatory that a court could simply infer, without more, that any legislation perpetuating or extending the system must have been motivated by an invidious purpose.[2] Such a system, however, would necessarily reveal a "stark pattern of racially discriminatory effects." See Mem. Op. at 11.
*40 In its motion for reconsideration, defendant contends that New York's system of electing judges is sufficiently discriminatory that the Court may infer that the legislation creating new judges (who would be elected according to the same system as existing judges) was motivated by a discriminatory purpose. Yet after more than a year of informal discovery, during which the State of New York produced volumes of information and permitted defendant's lawyers to take statements from any state official, defendant offers no evidence whatsoever of a "stark pattern" of discriminatory effects. In fact, defendant has yet to put forward any credible suggestion that the decision to create new judgeships  to be filled according to the same procedures as existing judges  was motivated by unlawful discrimination rather than a need to keep pace with a rapidly burgeoning docket. The truth of the matter is that defendant has not demonstrated that New York's system of electing judges is "blatantly discriminatory." As such, there is simply no basis to infer any discriminatory purpose behind the legislation in question.
We have unequivocally rejected defendant's argument that we must analyze New York's existing system of electing judges to determine whether it discriminates against minority voters. As we noted in our prior opinion, the proper forum for such a determination is a section 2 proceeding. And, while we have noted that a decision to perpetuate a blatantly discriminatory electoral system might give rise to an inference of discriminatory intent, defendant has completely failed to establish that more discovery would enable it to portray New York's electoral scheme as such a system. We are convinced that defendant's motion neither sets forth new evidence which was unavailable at the summary judgment hearing nor identifies a clear error of law in our prior opinion. Accordingly, defendant's motion to reconsider is denied.
FOR THE COURT, SO ORDERED.
NOTES
[1] Although the United States does not identify any legal basis for its Motion to Reconsider, the Court will assume that defendant makes this motion pursuant to Fed.R.Civ.P. 59(e).
[2] At oral argument on the summary judgment motion, defense counsel suggested such a system by positing an electoral scheme in which only whites were permitted to vote for judges.