# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **BRETT E. COHEN, as Personal and Legal Representative of the Estate of D.Q.,** ) ) ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **Civil Action No. 08-480 (RMC)** |
| **DISTRICT OF COLUMBIA, *et al.*,** ) ) | |
| **Defendants.** ) ) | |

## MEMORANDUM OPINION

D.Q., a foster child and ward of the District of Columbia, was killed when he was transported by van to Progressive Life Center for an appointment, he exited the van, and stepped into oncoming traffic. Brett Cohen, as personal and legal representative of the Estate of D.Q., brought suit against: the District of Columbia ("District"); Progressive Life Center ("Progressive") (the contractor that arranged for placement with foster parents and provided regular counseling and medical care to D.Q.); Nile Express Transport, Inc. (the company that operated the van that transported D.Q.); and William Woods (the driver of the oncoming car). The District of Columbia and Progressive moved for summary judgment. Because the evidence did not meet the threshold required to demonstrate that the District or Progressive acted with deliberate indifference that shocks the conscience, *see Estate of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006),[1]

---

[1] This "stringent requirement exists to differentiate substantive due process, which is intended only to protect against arbitrary government action, from local tort law." *Butera v. District of Columbia*, 235 F.3d 637, 651 (D.C. Cir. 2001). Negligence alone is insufficient to establish a substantive due process claim under § 1983. *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

the Court granted summary judgment in favor of Defendants on Plaintiff's Due Process claim under

42 U.S.C. § 1983. *See* Mem. Op. [Dkt. # 130] & Order [Dkt. # 131]. The Court remanded the

remaining claims to the District of Columbia Superior Court. Plaintiff moves for reconsideration

pursuant to Federal Rule of Civil Procedure 59(e). As explained below, the motion will be denied.

A Rule 59(e) motion is discretionary and need not be granted unless the district court

finds that there is an "intervening change of controlling law, the availability of new evidence, or the

need to correct a clear error or prevent manifest injustice." *Fox v. Am. Airlines Inc.*, 389 F.3d 1291,

1296 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). A

Rule 59(e) motion is not "simply an opportunity to reargue facts and theories upon which a court has

already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995). Nor is it an avenue

for a "losing party . . . to raise new issues that could have been raised previously." *Kattan v. District

of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993). A motion to reconsider is not "a vehicle for

presenting theories or arguments that could have been advanced earlier." *Smith v. Hope Village,

Inc.*, 481 F. Supp. 2d 172, 183–84 (D.D.C. 2007); *see also Green v. Whiteco Indus.*, 17 F.3d 199,

202 n.5 (7th Cir. 1994) ("[M]otions for reconsideration . . . cannot . . . be employed as a vehicle to

introduce evidence that could have been adduced during the pendency of the summary judgment

motion."). "Rule 59 was not intended to allow a second bite at the apple." *Oceana, Inc. v. Evans*,

389 F. Supp. 2d 4, 8 (D.D.C. 2005).

Plaintiff does not allege any change in law nor does he point to new evidence. Instead

he asserts that the Court committed clear error. In making this claim, Plaintiff merely rehashes the

same arguments presented in opposition to the motions for summary judgment filed by the District

and Progressive. For example, Plaintiff continues to argue that Progressive and the District are liable

because they failed to ensure that D.Q. consistently took his medications, speculating that if he had been taking his medication he would not have run impulsively into the street, and that the District and Progressive should have had policies in place regarding the administration of medication. The Court addressed these arguments:

> Plaintiff has not shown that the District and Progressive knew or should have known that D.Q.'s insufficient medication in the two weeks before July 15 would result in his crossing the street in front of an oncoming car on July 18. Moreover, there is no evidence that D.Q. was experiencing any particular emotional or behavioral problem in the weeks immediately before his death that should have put the District or Progressive on notice that D.Q. was at risk of serious harm.
>
> . . . .
>
> Dr. Adewale evaluated D.Q. just [three] days before the accident and he did not find D.Q. to be a danger to himself or others. He opined that D.Q. had sufficient medication in his system on July 15 such that he had not suffered negative effects. Dr. Adewale placed D.Q. back on prescribed medications that very day. The record as a whole reveals great attention to D.Q. and his needs. Plaintiff has failed to point to evidence sufficient to show that the District or Progressive acted, or failed to act, with deliberate indifference that shocks the conscience.

Mem. Op. at 15–16. Similarly, Plaintiff again argues that the District and Progressive should have known of the danger that D.Q. would jump out of a car into traffic based on three incidents that occurred four years earlier when D.Q. was seven years old. The Court rejected that argument, explaining that "[g]iven the passage of time without any evidence of similar behavior, the District and Progressive's failure to take action to prevent eleven-year-old D.Q. from exiting the van and crossing the street on the day of his death could not have been deliberately indifferent. No

reasonable juror could find that they knew or should have known that there was a substantial risk that D.Q. would step into traffic." *Id*. at 17.

Plaintiff also attempts to introduce evidence of subsequent remedial measures, evidence that he failed to present in opposition to the motions for summary judgment. In support of his claim that the District lacked sufficient policies regarding the transportation of foster children, Plaintiff points to an email prepared by the District more than two months after the accident that refers to the development of new transportation policies.[2] Summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The email is not new or newly discovered. If Plaintiff wanted to rely on this evidence, he should have filed it in response to Defendants' motions for summary judgment. Moreover, Federal Rule of Evidence 407 bars the introduction of subsequent remedial measures:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or

---

[2] The email states:

> In an effort for MAA to administer and manage the provision of safe transportation from pick-up to delivery, with or without driver assistance as necessary, attached are some protocols we can start applying while "formal" non-emergency transportation Policies and Procedures are being discussed, developed and written. . . . The medical provider or Agency (e.g. CFSA) must request or arrange for an attendant for Medicaid recipients who are minor children under the age of 15, when they know there is no parent or guardian available to accompany the child on the trip to the provider's faculty or office.

Pl.'s Mot. for Recons. [Dkt. # 132], Ex. A (Email dated Sept. 29, 2006).

harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, [or] culpable conduct . . . .

Fed. R. Evid. 407. Here, Plaintiff improperly seeks to rely on a subsequent remedial measure to prove culpable conduct.

In addition, Plaintiff argues that the lack of transportation policies regarding dropping off children at Progressive constituted deliberate indifference and that the Court should have relied on the reports and opinions of its transportation expert, Richard Garrity, and its social services expert, Anthony Veronico. Plaintiff contends:

> According to Mr. Garrity, the District and [Progressive] should have evaluated the pick-up and discharge of clients at [Progressive's] facility, because these acts were "a common, repetitive, and daily occurrence at the [Progressive] facility." According to Mr. Garrity, [Progressive] faced undue safety risk with its policies (or lack thereof) for the safe discharge and pickup of clients. Plaintiff's social services expert Anthony Veronico echoed the view of Richard Garrity, in explaining that D.Q. would be at risk of harm if they did not provide an attendant.

Pl.'s Mot. for Recons. at 15. Mr. Garrity stated that "[p]eriodic monitoring of transportation contractors is common practice in human services or community transportation. While not mandated, on-going oversight of transportation carriers is common industry practice." *Id.* at 22. It is true that the Court did not adopt the views of Plaintiff's experts. Instead, the Court evaluated the entire record presented by the parties, as it is required to do to evaluate a motion for summary judgment. Furthermore, the expert reports presented by Plaintiff are unsworn and unverified and thus are inadmissible. *See Nnadili v. Chevron U.S.A., Inc.*, 435 F. Supp. 2d 93, 104 (D.D.C. 2006) (citing *Fowle v. C & C Cola*, 868 F.3d 59, 67 (3d Cir. 1989)). In light of the entire record, the Court found that Plaintiff had not mustered sufficient evidence to show a genuine issue regarding deliberate

indifference, finding that "no reasonable juror could find that the District knew or should have known of a substantial risk to D.Q.'s safety because the van parked across the street or because there was no attendant accompanying the driver. Due Process does not require the District to set standards, oversee, and monitor every single detail of a contractor's performance (such as where the contractor parks) without some notice that such is necessary to keep its charges safe." Mem. Op. at 21.[3]

Because Plaintiff has not demonstrated any clear error or other basis for reconsideration, the motion for reconsideration [Dkt. # 132] will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: January 13, 2011

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge

---

[3] *Compare DeAnzona v. City and County of Denver*, 222 F.3d 1229 (10th Cir. 2000). In *DeAnzona*, the parents of a child who drowned at a city/county-sponsored day camp brought a due process claim against the City and County of Denver, and the Tenth Circuit held that summary judgment should be granted to the defendants. The "[l]ack of diligence in watching a five-year-old child walk twenty-five yards is not reckless disregard . . . Not paying enough attention to a child and thus allowing the child to wander away and drown is terribly tragic, and possibly even negligent. However, mere negligence does not shock the conscience." *Id*. at 1236.